[No. C008647. Third Dist. Nov. 13, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
TOLLIVER LYONS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---
\*See footnote 2, *post*, page 1458.

## COUNSEL

Cynthia Macioch Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Shirley A. Nelson and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BLEASE, J.**—The defendant was convicted of robbery, a serious felony (Pen. Code, §§ 211, 1192.7, subd. (c)(19)[1]), and of attempting to dissuade the victim from testifying against him by threat of force or violence (§ 136.1, subds. (a), (b) and (c)(1)). He was also found to have prior convictions for assault with intent to commit robbery (§ 220), attempted rape (§§ 664/261, subd. (2)(3)) and attempted burglary (§§ 664/459). He was sentenced to an aggregate term of 17 years.

Defendant appeals from the judgment. In the published part of this opinion[2] we respond to defendant's contention that the trial court erroneously instructed the jury that section 136.1 is a general intent crime, i.e, that "[w]hen a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent . . . ." We agree with defendant but conclude that the error was harmless. A specific intent is an intent to accomplish some additional consequence by commission of the proscribed act. The sense of the general intent instruction is dependent upon its application to the substantive elements of the offense, i.e., to what is proscribed. In this case the jury could not sensibly have applied the general intent instruction to the elements of section 136.1 without concluding that to convict defendant it was required to find that he acted with the intent that the witness not testify.

We will affirm the convictions but remand the case to the trial court to correct a sentencing error discussed in the nonpublished portion of the opinion.

### FACTS

About 6 a.m. on November 22, 1989, Donald Crowell left home and walked to the Greyhound bus station to talk to a friend about buying an item. As he passed the Royal Hotel, defendant grabbed him. He told Crowell that he had found himself to be a homosexual and asked Crowell if the chain he

---

[1]Undesignated references to sections are to the Penal Code.

[2]The Reporter of Decisions is directed to publish the opinion except for parts II and III of the Discussion.

was wearing was real gold. Crowell responded that it was gold plated. Defendant told him he could drape him in real gold, took the chain, Crowell's watch and his glasses, struck him under the left eye and ran off.

Crowell described his attacker as a dark-skinned Black man with braided hair and a thin mustache, about 20 years old, 5'8" tall and 160 pounds. He claimed the items taken were worth $247. At trial, he claimed the items were worth over $500.

At about 7 p.m. the same day, Crowell spotted defendant near a bus station, summoned the police and defendant was arrested. Sacramento Police Officer Nicholas Yaranon described defendant as a medium-skinned Black man with a mustache and beard, 5'11", 35 years old, and 160 pounds. Defendant had none of the stolen items on his person when arrested.

Subsequently Crowell received a letter from defendant, which is set forth in the margin.[3] At trial, the parties stipulated that defendant authored the letter and that he obtained Crowell's address from a copy of the police report given him by his attorney.

## DISCUSSION

### I

The jury was instructed that to convict defendant of a violation of section 136.1 it must be proved inter alia that "[a]n attempt was made to prevent or dissuade [a witness or victim] from testifying" in his trial.[4] It was also told

---

[3]Defendant's letter read as follows:

"Hello Don: [¶] I'm in the county jail and you won't believe what I am charged with. guess? . . . 'Robbery.' Some white guy with a black leather jacket pointed me out to the police the day before Thanksgiving, saying I robbed him for his watch and gold chain. Ain't that a bitch? All this supposedly happened in front of the Greyhound station. [¶] I'll be going to a 'preliminary-hearing' on the 14th of next week. A 'preliminary hearing' is a court proceeding where the guy that said I robbed him has to come to court and testify and identify me as the person that robbed him. The guy has a right not to show up in court, and if he does not, I will be set free. And if he does show up in court and says I'm not the person that robbed him, or that he's not sure if I'm the person that robbed him, I will be set free. But if he does come to court and says I'm the person that robbed him I will still be set free because I have three witnesses that will testify that I was no-where near the Greyhound station during the time the robbery took place. [¶] Well, back to you. How are you feeling? I hope you're in the best of health and manage to stay that way, because when I get out we're going to do some drinking and partying and celebrate the holidays and look forward to a prosperous future in 1990. [¶] See Ya!! [¶] P.S. Come by and visit me. Visiting is from 9:AM to 11:PM."

[4]The full instruction reads:

"Every person who knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any proceeding authorized by law; and who

that the intent required for this offense is a general intent. "In the crimes charged in Count Two of the information, namely, preventing or dissuading a witness or attempting to so prevent or dissuade from testifying accompanied by force or implied threat of force or violence upon the witness or victim, there must exist a union or joint operation of act or conduct and general criminal intent.To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent even though he may not know that his act or conduct is unlawful." (CALJIC No. 3.30 (1989 rev. updated).)

 Defendant claims that the trial court thereby misled the jury into believing that section 136.1 is a general intent crime. He argues that a reversal is required, relying upon *People* v. *Ford* (1983) 145 Cal.App.3d 985 [193 Cal.Rptr. 684]. "Unless the actions or statements are meant to achieve the consequence of affecting a potential witness' testimony, no crime has been committed." (*Id.* at p. 989.) The distinction between a general and specific intent is of consequence only if the jury could have read the instructions to permit conviction of the defendant for having intended the act of sending the letter to Crowell, viewed as tending to dissuade him from testifying, without intending that result.

 "An intent is forward looking; it is the end in view, the object to be accomplished by the action taken, which is its criterion." (*People* v. *Brady* (1987) 190 Cal.App.3d 124, 136, fn. 4 [235 Cal.Rptr. 248].) If the end in view is simply a proscribed act we ordinarily call that a general intent. "When the definition . . . consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence . . . . [the] intention is deemed to be a general criminal intent." (*People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].) When the end in view looks to a consequence to be derived from the act, we call that a specific intent. "When the definition [of an offense] refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (*Id.* at p 457.)

---

accompanies such act with force, or an express or implied threat of force or violence upon the witness or victim is guilty of the crime of dissuading a witness in violation of Penal Code section 136.1(a)(c)(1).

"In order to prove such a crime, each of the following elements must be proved:

"1. A person was a witness or a victim to a proceeding authorized by law;

"2. An attempt was made to prevent or dissuade such person from testifying at the proceeding;

"3. The act was accompanied by force or an express or implied threat of force or violence upon such person.

"A preliminary hearing is a proceeding authorized by law. Once the crime is committed, it makes no difference whether the witness or victim actually does or does not testify."

By these measures section 136.1, subdivision (a) defines a specific intent crime. "[E]very person who knowingly and maliciously prevents or dissuades or attempts to so prevent or dissuade any witness or victim from attending or giving testimony at any trial" is guilty of the offense. This offense can be committed in (at least) two ways; by a malicious and knowing dissuasion from testifying and by an attempt to so dissuade. The defendant was specifically charged in the latter manner.

With respect to a knowing act of dissuasion, the term "dissuades" is used as a transitive verb, meaning to act (verbally or otherwise) to prevent a witness from testifying. In an appropriate context it is permissible to use "dissuade" in the intransitive sense such that a person could engage in an *act* of communication which in fact dissuaded a witness from testifying without intending that result. In section 136.1 that possibility is attenuated by the modifier "knowingly", which makes clear that the relation of act to consequence must be known to the actor.[5] Such a knowing act is ordinarily a criterion of intention. (See *People v. Rogers* (1985) 172 Cal.App.3d 502, 512 [217 Cal.Rptr. 809]; *In re Stonewall F.* (1989) 208 Cal.App.3d 1054, 1062, fn. 7 [256 Cal.Rptr. 578] ["It is the *knowledge* of [the] *near certain* causal consequence" which marks this form of intention.].) More to the point, a specific intention is also defined by the proscription of an "attempt[] to . . . prevent or dissuade any witness . . . from . . . giving testimony," the specific offense with which the defendant was charged and convicted. An attempt connotes the intent to accomplish its object, both in law (§ 21a) and in ordinary language. Moreover, in this case there is no plausible explanation for defendant's act of sending the letter to Crowell (fn. 3, *ante*) without ascribing to him an intention to dissuade Crowell from testifying at defendant's "preliminary hearing," to which the letter is addressed.

The defendant seeks support from *People v. Ford, supra*, 145 Cal.App.3d 985, which, relying upon *People v. Wickersham* (1982) 32 Cal.3d 307 [185

---

[5]The jury was instructed that " 'knowingly' means with knowledge of the existence of the facts in question." In the context of section 136.1, the "facts in question" concern the prevention of a witness or victim from testifying. Such a "knowing" act of *dis*suasion carries with it the knowledge of the relation of means to end. That ordinarily means that the perpetrator intended that end. It ordinarily makes no sense to say that one has knowingly dissuaded another from doing some thing without intending that it be done.

The jury was also told, in the language of the bracketed clause of CALJIC No. 1.21, that "[a] requirement of knowledge does not mean that the act must be done with any specific intent". The use note says that this clause should be used "only when a specific intent crime is *also* charged." (Italics added.) The manifest purpose of the clause is to distinguish between general and specific intent crimes when both are charged. But here two specific intent crimes were charged. The clause thus doubly mischaracterized the intent required of section 136.1. However, for the reasons given in the text the characterization would not have deflected the jury's attention from the substantive requirements of section 136.1.

Cal.Rptr. 436, 650 P.2d 311], concluded that the *failure* to give an instruction on specific intent in a section 136.1 case required reversal of the conviction. The opinion, while setting out facts which are equivocal as to the defendant's intention,[6] does not set forth the instructions given the jury nor examine whether an instruction in the language of section 136.1 may convey the requisite intent. For these reasons the *Ford* opinion does not aid the analysis of this case. *Wickersham*, which concerns a failure to instruct the jury on a lesser included offense, says no more of relevance than that a reversal of a criminal conviction is compelled if a defect in the instructions "deprives a defendant of the 'constitutional right to have the jury determine [a] material issue presented by the evidence.' " (32 Cal.3d at p. 335, citation omitted.)

The jury was instructed in the language of section 136.1 and told that proof of the offense required a showing that an "attempt was made to prevent or dissuade" Crowell from testifying. For the reasons advanced above, these instructions unambiguously told the jury that for conviction defendant must have had the intent to prevent Crowell from testifying.

The erroneous instruction on general intent could not have deflected the jury from that reading. Of significance here, the general intent instruction says that when a person "intentionally does that which the law declares to be a crime, he is acting with general criminal intent even though he may not know that his act or conduct is unlawful." In *People* v. *Zerillo* (1950) 36 Cal.2d 222 [223 P.2d 223], a prosecution for offering a bribe to a public official, an offense requiring a specific intent, the jury, as here, was instructed on general criminal intent. The court found the instruction harmless. "The challenged instruction used the expression 'criminal intent' in its narrow and proper sense, defining it as nothing more than the intentional doing of 'that which the law declares to be a crime,' and, . . . other instructions pointed out . . . that the act in the present case 'which the law declares to be a crime' is the offering of a bribe with specific intent to influence official action. As so used and defined, the expression 'criminal intent' . . . did not . . . authorize the jury to infer a specific intent on defendant's part . . . from the mere act of his offering money to" the public official. (*Id.* at p. 232.) Since the general intent instruction is dependent upon "that which the law declares to be a crime," its effect turns upon the substantive elements of the offense to which it is applied.

Here the instructions to the jury "declare[d] to be a crime" an attempted act of dissuasion from testifying, requiring perforce a specific intent to

---

[6]The factual recitation shows a threat by the defendant which could be read "as [simply] a warning [of impending retaliation] or [as a] threat not to testify in the future." (*People* v. *Ford, supra*, 145 Cal.App.3d at pp. 989-990.)

accomplish that result. Prefacing the language of the instructions, which conveyed the correct intention, with the word "intentionally" could not have deflected the jury from that reading. Thus the application of the general intent instruction to the elements of section 136.1 accomplished nothing more than to emphasize the specific intent required of the offense. The anomaly thus revealed is that the general intent instruction is dependent for its effect upon the substantive provisions of the law to which it is applied. (See generally *In re Stonewall F., supra*, 208 Cal.App.3d 1054.)

Thus defendant is left with the empty claim that the jury was given the wrong label for the correct substantive instructions. The trial court's instruction on general intent was error but patently harmless. (See *People v. Zerillo, supra*, 36 Cal.2d at pp. 231-233.)

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The convictions are affirmed. The sentence is vacated and the cause remanded to the trial court for resentencing consistent with the views expressed in this opinion.

Puglia, P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 11, 1992.

---

*See footnote 2, *ante*, page 1458.