[No. B072994. Second Dist., Div. Six. Feb. 8, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDY McDANIEL, Defendant and Appellant.

**COUNSEL**

Creig Alan Dolge, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Robert F. Katz, Susan D. Martynec and Shawn A. McGahey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

STONE (S. J.), P. J.—Rudy McDaniel appeals from a judgment of conviction by jury of threatening a witness (Pen. Code, § 140) and a finding that he had previously been convicted of a felony within the meaning of Penal Code section 667.5, subdivision (b).[1] He contends that the trial court failed to properly instruct the jury on the elements of section 140 and the requisite intent to commit it. He asserts that threatening a witness under section 140 is a specific intent crime and, further, that CALJIC No. 1.21 defining "knowledge" should have been given.

We hold that threatening a witness under section 140 is a general intent crime and that an instruction on knowledge is not required. We affirm the judgment.

### FACTS

On February 16, 1992, Randy Dionne, a Santa Maria taxi driver, overheard two juveniles discussing the theft of some money. One of the juveniles, appellant's son (hereinafter McDaniel), asked Dionne if he thought that someone could go to jail for taking money even if no one saw him. When McDaniel pulled out a sock full of money from which to pay the cab fare, Dionne asked if he was talking about himself. McDaniel admitted he was.

Dionne took down the names of the two youths on an application for a discount ride program with the taxi company. Dionne told his dispatcher and the police of the conversation. Later, Dionne had a conversation with appellant, who had been a passenger in his cab previously. They talked about whether or not appellant's son had paid for the discount ride program known as the "Dollar Club." McDaniel had accused Dionne of taking the money for the "Dollar Club" without reporting it to his dispatcher, but later called into the cab company to say that it was not true. Appellant indicated that it was his son's problem and that he did not want to hear about it.

Several weeks later, while Dionne was waiting in his cab at the bus station, appellant rode up on a bicycle and said, "Do you know the information that you gave the police? You need to watch out what you say to

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

people." When Dionne tried to explain, appellant said he did not have to listen to anything and that he could just ride off on his bicycle. Appellant said that he knew Dionne's name and had information about him. He also indicated that he knew where Dionne lived because he had a police report.

As appellant rode off on his bicycle, he said, ". . . [y]ou can get yourself in trouble that way" and ". . . I'm going to get you . . . ." The witness testified he ended the conversation with "white boy" or "home boy." Dionne felt threatened and flagged down an officer and reported the incident. Appellant was later arrested and admitted having a conversation with Dionne, but denied that he had made any threats. He said that he was aware of the court case involving his son, but said he did not know the status of the case.

Appellant testified that he and his family used Dionne's taxicab on two occasions. On the second occasion, Dionne said that he might lose his job over the dispute regarding McDaniel's alleged membership in the Dollar Club. Appellant sided with Dionne and believed the issue was resolved. He said the conversations he had with Dionne were pleasant and friendly. When he rode his bicycle to the bus station and talked to Dionne, Dionne wanted to explain his side of the Dollar Club misunderstanding. Appellant said that "I'm not involved one way or the other, I was just letting you know, you know, being a public servant that the children are complaining that they give—have given you money for this, this Dollar Club, and you didn't turn it in." Appellant did not recall any conversations with Dionne about theft charges pending against McDaniel or threatening to "get" Dionne. He denied having seen any reports involving his son and making statements about knowing where Dionne lived or threatening him, or even knowing at that time that Dionne had given information to the police.

## DISCUSSION

### 1. *Violation of Section 140 Not a Specific Intent Crime.*

At trial, defense counsel asked the court to instruct on specific intent (CALJIC Nos. 2.02, 3.31) and on the definition of "knowingly" (CALJIC No. 1.21), as well as the definition of "threat." The court refused to do so and instructed instead that a violation of section 140 is a general intent crime. (CALJIC No. 3.30 (1992 rev.).) Appellant asserts that the word "because" in section 140 creates an additional intent requirement beyond the general intent required in the first part of the statute. Section 140 provides, in pertinent part: "Except as provided in Section 139, every person who willfully threatens to use force or violence upon the person of a witness to,

or a victim of, a crime or any other person, or to take, damage, or destroy any property of any witness, victim, or any other person, because the witness, victim, or informant has provided any assistance or information to a law enforcement officer, or to a public prosecutor in a criminal proceeding or juvenile court proceeding, shall be punished by imprisonment in the county jail. . . ."

To support his argument, appellant points to similar statutes that have been held to have a specific intent requirement, e.g., section 139, prohibiting a person who has been convicted of a felony offense from communicating a threat to a witness (see *People* v. *Dollar* (1991) 228 Cal.App.3d 1335, 1341-1342 [279 Cal.Rptr. 502]), and section 136.1, which prohibits preventing or dissuading a witness from testifying. (See *People* v. *Brenner* (1992) 5 Cal.App.4th 335, 339 [7 Cal.Rptr.2d 260]; *People* v. *Lyons* (1991) 235 Cal.App.3d 1456, 1461 [1 Cal.Rptr.2d 763]; *People* v. *Ford* (1983) 145 Cal.App.3d 985, 989 [193 Cal.Rptr. 684].)

The trial court relied upon *People* v. *Carrera* (1989) 49 Cal.3d 291, 341-342 [261 Cal.Rptr. 348, 777 P.2d 121], in denying appellant's requested instructions on specific intent. There, the defendant asserted that the court should have instructed the jury sua sponte that specific intent was required for the crime of threatening a witness when the prosecution presented evidence of that crime as an uncharged offense in the penalty phase of the trial. The California Supreme Court disagreed. The court held that the trial court was under no obligation to instruct the jury sua sponte on the elements of other offenses presented as uncharged criminal activity, "nor is it obliged to instruct sua sponte on the degree of intent required of such an offense, provided only that the instructions it does give do not mislead the jury." (*Id.*, at p. 342.)

The trial court here was correct. ■ In *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], the California Supreme Court explained the difference between a specific intent crime and one requiring only a general intent. "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent. There is no real difference, however, only a linguistic one, between an intent to do an act already performed and an intent to do that same act in the future."

In other words, if the end in view is simply a proscribed act, the intent required is only a general one because no further acts or future consequences

are envisioned from the illegal act. (*People* v. *Lyons*, *supra*, 235 Cal.App.3d 1456, 1460; *People* v. *Lopez* (1986) 188 Cal.App.3d 592, 598 [233 Cal.Rptr. 207].) Conversely, when the end in view looks to a further consequence of the act, the intent is specific. (*People* v. *Lyons*, *supra*, at p. 1460; see also *People* v. *Dollar*, *supra*, 228 Cal.App.3d 1335, 1341.)

The underlying purpose of the threat in section 139, threats of force or violence against a witness or crime victim, is "to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family." (§ 139, subd. (c).) The communication of the threat is the act and the intent to create a future or additional consequence is the intent to cause the victim to feel fear or intimidation. (*People* v. *Dollar*, *supra*, 228 Cal.App.3d 1335, 1341.) Thus section 139 has been held, under the *Hood* analysis, to have the specific intent to cause the victim fear or intimidation. (228 Cal.Rptr. 1341.)

Section 136.1 proscribes preventing or dissuading a witness or victim from testifying or doing other enumerated acts. Unless the defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts, no crime has been committed under this section. (*People* v. *Ford*, *supra*, 145 Cal.App.3d 985, 989.) Since the definition refers to a defendant's intent to achieve some further or additional consequence, section 136.1 is a specific intent crime. (145 Cal.App.3d at p. 990.)

The acts proscribed in section 140, to the contrary, take place *because* the witness, victim, or informant has provided information or assistance to a law enforcement officer. The statute is retrospective rather than prospective and proscribes acts which are retaliatory rather than acts to intimidate. It defines only a description of the particular act of threatening to use force or violence, or taking, damaging, or destroying property, without reference to an intent to do a further act or achieve a future consequence. Consequently, section 140 is a general intent crime and the trial court did not err in so instructing.

2. *Knowledge Is Not an Element of Section 140.*

Appellant asserts that the trial court erred in refusing to amplify the word "because" with the definition of "knowingly" set forth in CALJIC No. 1.21. He argues that this definition was necessary in order to have the jury properly consider the apparent requirement in the offense that the offender have knowledge that the person being threatened is a witness, and that the offender threaten the person as a result of that person's being a witness. He further asserts that by refusing to further amplify the definition of the word

"because" as used in the instructions, the trial court left the jury without adequate guidance as to the intent necessary to commit a violation of former section 140.

The word "knowingly" is not used in section 140. Nonetheless, courts have held that "knowingly" must be implied in certain statutes to be consistent with section 20, which "makes mens rea a requirement to act culpably." (*People* v. *Lopez, supra*, 188 Cal.App.3d 592, 599.) *People* v. *Lopez, supra*, held that instructions in cases involving violations of section 148 should include knowledge as an element even though section 148 does not expressly make knowledge an element of the offense of resisting arrest. (At pp. 596, 600.) Similarly, *People* v. *Calban* (1976) 65 Cal.App.3d 578, 584-585 [135 Cal.Rptr. 441], held that to be guilty of making a false affidavit in violation of Elections Code former section 29218, the prosecution had to prove that the defendant knew the affidavit was false when made.

■ " 'A requirement of knowledge is not a requirement that the act be done with any specific intent. . . . The word "knowing" as used in a criminal statute imports only an awareness of the facts which bring the proscribed act within the terms of the statute. (Pen. Code, § 7, subd. 5.)' " (*People* v. *Lopez, supra*, 188 Cal.App.3d 592, 598; *People* v. *Calban, supra*, 65 Cal.App.3d 578, 584.) CALJIC No. 1.21 defines "knowingly" as "with knowledge of the existence of the facts in question. . . ." This definition is consistent with that found in Webster's Third New International Dictionary Unabridged (1981), which defines "knowing" as "having or reflecting knowledge, information, or insight . . . ," and "knowingly" as "in a knowing manner . . . with awareness, deliberateness, or intention . . . ." (At p. 1252.)

■ Here, as the trial court opined, defining "knowingly" or "knowledge" where the statute did not use that term was unnecessary. The key word in the statute is "because" which means "for the reason that," "on account of . . . ." (Webster's, *op. cit. supra*, at p. 194.) "Because" does not have a technical meaning peculiar to the law, nor does the word "threat."
■ When words are commonly understood and have no technical meaning peculiar to the law, instructions on their meaning are not required. (*People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].)
■ It is true that implied in the phrase "because the witness, victim, or informant has provided any assistance or information . . ." is an awareness by the offender that such is the case.

The jury was instructed here that "[e]very person who willfully threatens to use force or violence upon the person of a witness to a crime, or any other

person, because the witness or other person has provided any assistance or information to law enforcement, is guilty of a felony. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A person willfully threatened to use force or violence upon the person of a witness to a crime, or upon any other person who has provided assistance or information to law enforcement; [¶] 2. The threat of force or violence must be because the witness or other person provided assistance or information to law enforcement." The jury was also instructed on the necessity of a union or joint operation of act or conduct and general criminal intent, which was defined (CALJIC No. 3.30 (1992 rev.)), and on the definition of "willfully" (CALJIC No. 1.20 (5th ed. 1988)).

These instructions were adequate. The word "because," in essence, takes the place of "knowledge" or "knowingly" in section 140. Under the instructions given, the jury could not have convicted appellant of threatening Dionne unless they also found it was "because" Dionne was a witness. In other words, the jury had to conclude that appellant knew, or was aware, that Dionne was a witness or supplied information to conclude he threatened Dionne because of Dionne's past acts.

Moreover, the word "because" in section 140 does not precisely mean knowledge, but rather "for the reason that." Section 140 describes an act in retaliation for something. If the court gave the CALJIC instruction on knowledge without further explaining "knowledge," a jury might be misled that appellant would have been criminally liable for threats due to his knowledge of Dionne's past report to the police rather than having to find that he made the threats *for the reason that* Dionne made the report. The court did not err in failing to instruct on the definition of "knowledge," "because," or "threat."

The judgment is affirmed.

Gilbert, J., and Yegan, J., concurred.