[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 632 
OPINION
Defendant and appellant Eddie Jason Lowery appeals his jury conviction for a single count of threatening a victim or witness who provided assistance to law enforcement in a criminal court proceeding. (Pen. Code, § 140, subd. (a).)[1] He contends his conviction should be reversed because section 140, subdivision (a), as written and as applied to the facts of his case, is constitutionally overbroad in violation of theFirst Amendment to the United States Constitution.
 FACTUAL AND PROCEDURAL BACKGROUND
In a prior case (People v. Lowery (Super. Ct. Riverside County, 2008, No. INF059263)), defendant and his wife were accused of stealing $250,000 in cash from 88-year-old Joseph Gorman. Gorman hired defendant and his wife to do housecleaning and some other work in and around his mobilehome on June 26, 2007. Gorman left defendant and his wife alone in the home for several hours. After they left, Gorman discovered he was missing $250,000 in cash he kept hidden in his home. Defendant and his wife were separately prosecuted for the theft. They were tried separately, and Gorman testified against them. Defendant was acquitted, but his wife was convicted of the theft and ordered to repay $250,000 to Gorman in restitution.
While attempting to locate the money taken from Gorman, an investigator obtained access to numerous tape-recorded conversations between defendant and his wife while the wife was in jail during the period of August 2007 through January 2008.[2] In the course of these conversations, defendant made a number of statements that served as the basis for the charge in this case. For example, defendant said, "Well, guess what I'm gonna do? I'm gonna kill the bastard. And I'm gonna go down to Mr. Gorman's house, maybe this week, and I'm gonna blow his fucken' head away." During trial, the jury heard a portion of the taped conversations and was also given a transcript. A registration records check revealed defendant owned a handgun as of January 28, 1993.
Defendant testified in his own defense and said he no longer owned a gun, did not intend to carry out the threats, and did not mean any of his statements about killing or blowing people up to be taken seriously. He indicated he made the statements because he was angry and because he believed he had been falsely accused by Gorman. During cross-examination, defendant was impeached with a prior conviction for cashing a stolen check with a forged signature in 1994. *Page 634 
The jury found defendant guilty as charged. The trial court granted defendant formal probation for a period of three years subject to various terms and conditions, including spending 365 days in jail.
 DISCUSSION
Defendant contends section 140, subdivision (a), is constitutionally overbroad because it lacks two elements: (1) that defendant specifically intend the statement be taken as a threat; and (2) that defendant have the apparent ability to carry out the threat.[3]
Our review of the constitutionality of a statute is de novo. "[U]nless a higher court has upheld the constitutionality of a statute, it is the obligation of the trial and appellate courts to independently measure legislative enactments against the Constitution and, in appropriate cases, to declare such enactments unconstitutional. [Citation.]" (People v.Superior Court (Mudge) (1997) 54 Cal.App.4th 407, 411, [62 Cal.Rptr.2d 721].)
"As the United States Supreme Court has explained, the overbreadth doctrine is `strong medicine' to be employed `sparingly,' and comes into play only when, measured in relation to a statute's constitutionally permissible sweep, `the overbreadth of a statute [is] not only . . . real, but substantial as well.' [Citation.] A statute may not be found constitutionally invalid on overbreadth grounds simply because it is possible to conceive of one or a few impermissible applications; such invalidity occurs only if the provision inhibits a substantial amount of protected speech. [Citation.]" (People v. Toledo (2001) 26 Cal.4th 221, 234-235
[109 Cal.Rptr.2d 315, 26 P.3d 1051].) Thus, an overbreadth challenge based on the First Amendment must fail unless it can be shown that the statute in question reaches a substantial amount of constitutionally protected speech.
"The First Amendment, applicable to the States through theFourteenth Amendment, provides that `Congress shall make no law . . . abridging the freedom of speech.' The hallmark of the protection of free speech is to allow `free trade in ideas' — even ideas that the overwhelming majority of people might find distasteful or discomforting. [Citations.] . . . [¶] The protections afforded by the First Amendment, however, are not absolute. . . ." (Virginia v. Black
(2003) 538 U.S. 343, 358 [155 L.Ed.2d 535, 123 S.Ct. 1536].) TheFirst Amendment does not preclude a state from banning a "true threat." (538 U.S. at p. 359.) *Page 635 
A true threat is not protected by the First Amendment "however' communicated." (Madsen v. Women's Health Center, Inc.
(1994) 512 U.S. 753, 773 [129 L.Ed.2d 593, 114 S.Ct. 2516].) "True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. [Citations.] The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats `protects individuals from the fear of violence' and `from the disruption that fear engenders,' in addition to protecting people `from the possibility that the threatened violence will occur.' [Citation.] Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." (Virginia v. Black, supra,538 U.S. at pp. 359-360.) In sum, "the only intent requirement for a true threat is that the defendant intentionally or knowingly communicate the threat." (Planned Parenthood v.American Coalition (9th Cir. 2002) 290 F.3d 1058, 1075.)
Section 140, subdivision (a), states in part as follows: "[E]very person who willfully uses force or threatens to use force or violence upon the person of a witness to, or a victim of, a crime or any other person, or to take, damage, or destroy any property of any witness, victim, or any other person, because the witness, victim, or other person has provided any assistance or information to a law enforcement officer, or to a public prosecutor in a criminal proceeding or juvenile court proceeding, shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison for two, three, or four years." "The word `willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (§ 7, subd. (1).)
"The obvious intent [of section 140] is to preserve and protect witnesses. Protection of witnesses does not require that the witness be personally aware of the threat involving force or violence. . . . [S]ection 140 prohibits the threats it describes, whether or not the threats are communicated to the potential victim." (People v. McLaughlin (1996)46 Cal.App.4th 836, 842 [54 Cal.Rptr.2d 4].)
As defendant contends, section 140, subdivision (a), does not require proof of a specific intent. (People v. McDaniel
(1994) 22 Cal.App.4th 278, 284 [27 Cal.Rptr.2d 306] (McDaniel).) As the appellate court inMcDaniel explained, section 140, subdivision (a), is different from some other similar statutes that criminalize threats but do require proof of a specific intent. For example, section 136.1, subdivision (a)(1), prohibits anyone from "[knowingly and maliciously" preventing or dissuading "any witness or victim from *Page 636 
attending or giving testimony at any trial, proceeding, or inquiry authorized by law." "Unless the defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts, no crime has been committed under this section. [Citation.] Since the definition refers to a defendant's intent to achieve some further or additional consequence, section 136.1 is a specific intent crime. [Citation.] [¶] The acts proscribed in section 140, to the contrary, take place because the witness, victim, or informant has provided information or assistance to a law enforcement officer. The statute is retrospective rather than prospective and proscribes acts which are retaliatory rather than acts to intimidate. It defines only a description of the particular act of threatening to use force or violence . . . without reference to an intent to do a further act or achieve a future consequence. Consequently, section 140 is a general intent crime. . . ." (McDaniel, at p. 284.)
Here, defendant does not even argue how section 140, subdivision (a), reaches a substantial amount of constitutionally protected speech. He simply contends it is overly broad because it does not include all of the elements in similar statutes, which prohibit different types of threats. This case is distinguishable from those defendant relies upon because section 140, subdivision (a), targets retaliatory threats. Defendant has not cited, and we could not locate, any controlling authority that requires a statute criminalizing retaliatory threats against victims or witnesses of a crime to include the elements of specific intent and apparent ability to carry out the threat.
In our view, there is no risk section 140, subdivision (a), could reach constitutionally protected speech. This is because section 140, subdivision (a), limits criminal liability to threats of force or violence against a witness to or a victim of a crime because the witness or victim provided assistance or information to a law enforcement officer, or to a public prosecutor in a criminal proceeding. In reaching our conclusion, we are persuaded by the Seventh Circuit's decision in U.S. v. Velasquez (7th Cir. 1985) 772 F.2d 1348
(Velasquez), which rejected an overbreadth challenge to a provision in a federal statute (18 U.S.C. § 1513), which is very similar to section 140, subdivision (a).[4] *Page 637 
As the Seventh Circuit stated in Velasquez, "Government cannot be effective if it cannot punish people who intimidate witnesses or informants by threatening to hurt them or damage their property, and no form of words would be significantly clearer than that employed in this statute. The First Amendment
is remotely if at all involved. A threat to break a person's knees or pulverize his automobile as punishment for his having given information to the government is a statement of intention rather than an idea or opinion and is not part of the marketplace of ideas.
"Cases that express concern with the constitutionality of general statutes punishing threats or intimidation do so because of the potential application of such statutes to `threats' that contain ideas or advocacy, such as a `threat' to picket an organization if it does not yield to a demand to take some social or political action. [Citations.] The statute at issue in this case is not a prohibition of threats generally and hence does not exploit the ambiguity of such words as threat, intimidate, and coerce; the statute is confined to threats to retaliate forcibly against government witnesses and informants. The statute's limited scope takes it out of the realm of social or political conflict where threats to engage in behavior that may be unlawful may nevertheless be part of the marketplace of ideas, broadly conceived to embrace the rough competition that is so much a staple of political discourse. [Citations.]
"It also can make no difference whether the threatener intends to carry out the threat. [Citation.] The argument that if there is no intent to carry through, the threat is a pure exercise in freedom of speech is purely verbal and misconceives the nature of threats. When making a threat one hopes not to have to carry it out; one hopes that the threat itself will be efficacious. Most threats, indeed, are bluffs. But if the bluff succeeds in intimidating the threatened person, or at least (as the words `intent to retaliate' require the government to show) is intended to succeed, it ought to be punished, to prevent putting government informants in fear for their personal safety or their property. And a bluff has no more to do with the marketplace of ideas than a serious threat." (Velasquez, supra,772 F.2d at p. 1357.)
Based on the foregoing, we reject defendant's overbreadth challenge to section 140, subdivision (a). Section 140, subdivision (a), does not regulate speech protected by theFirst Amendment and does not violate the First Amendment as applied in defendant's case. As a result, the trial court properly overruled defendant's First Amendment objections to section 140, subdivision (a). *Page 638 
 DISPOSITION
The judgment is affirmed.
McKinster, J., and King, J., concurred.
[1] All further statutory references are to the Penal Code unless otherwise stated.
[2] The Riverside County jail system tracks and monitors all calls to and from inmates. Inmates are informed that their telephone calls are being monitored and recorded.
[3] Defendant also objected to section 140, subdivision (a), on the same constitutional grounds prior to trial. However, the trial court rejected the argument and concluded the statements defendant made in the tape-recorded conversations were not protected by the First Amendment.
[4] In pertinent part, subdivision (b) of United States Code section 1513 states as follows: "Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for —
"(1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or
"(2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer; or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." *Page 639