Filed 7/23/21  P. v. Malear CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br> v. <br> STEVEN LEE MALEAR, <br><br> Defendant and Appellant. | A159659 <br><br> (Contra Costa County <br> Super. Ct. No. 5-190811-0) |

In August 2018, defendant Steven Malear was arrested for battery on his then-girlfriend, Jane Doe.  After his arrest, Malear made two calls from jail, about 40 minutes apart, to Doe.  In the first call, Malear asked Doe to drop the charges against him.  In the second call, Malear told Doe not to go to court when called.

Malear was tried for the battery on Doe and other crimes, including stalking with a prior conviction.  He was convicted of several charges, including two related to the August 2018 phone calls.  Count 4, knowingly and maliciously attempting to dissuade a victim or witness from testifying, was based on the second phone call, in which Malear told Doe not to go to court when called.[1]  Count 5, dissuading a victim or witness from prosecuting

---

[1] The conviction on count 4 was under Penal Code section 136.1, subdivision (a)(2) (section 136.1(a)(2)).  All further statutory references are to the Penal Code unless otherwise noted.

1

a crime, was based on the first phone call, in which Malear asked Doe to drop the charges.[2]  The trial court sentenced Malear to six years in prison, including concurrent terms for counts 4 and 5.

On appeal, Malear raises three claims:  (1) his conviction on count 4 must be reversed because the statute under which he was convicted, section 136.1(a)(2), is unconstitutionally vague; (2) even if the count 4 conviction is affirmed, his sentence on it should be stayed under section 654 because the phone calls underlying counts 4 and 5 constitute a single act; and (3) the abstract of judgment should be amended to reflect the correct criminal conviction assessment fee and court operations assessment fee.  We agree with the parties that the abstract of judgment should be corrected but otherwise affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

Malear and Doe knew each other for several years before starting to date in March 2018.  In August 2018, they were living together in a "pop-up" trailer with Doe's one-year-old daughter from a previous relationship.  Doe was also about 15 weeks pregnant with Malear's twins.  The trailer was set up in Concord in the driveway of a friend of Doe's father.

Doe testified that on the evening of August 17, she and her daughter were resting in the trailer.  Malear came home around 8:00 p.m., and Malear and Doe began to argue.  Doe threw water on Malear and in response, Malear picked her up by the neck, lifted her off the ground for several seconds, and threw her on the bed.  Doe then slapped and scratched Malear.  Eventually,

---

[2] The conviction on count 5 was under section 136.1, subdivision (b)(2) (section 136.1(b)(2)), which unlike section 136.1(a)(2) does not have a malice requirement.

2

Malear left the trailer, but a few moments later, Doe felt a "jolt" that she believed was Malear hitting the trailer with his car as he drove away. Doe called 911, and the police responded. She was not seriously injured during the incident.

Malear, who testified in his own defense, denied being at the pop-up trailer on August 17. He testified that he had argued with Doe on August 11 and spent that night at his brother's house. And he claimed that he spent the nights of August 12 through August 17 in his car outside of the construction job site at his new job in Oakland. He testified that although he did go to the trailer on August 16, he did not choke or throw Doe, or hit the trailer with his vehicle, on that occasion.

Malear was arrested on August 19 at about 2:00 a.m. Later that morning, he made two calls from jail to Doe that began 42 minutes apart. In the first call, which began at 9:41 a.m., Malear said, "[Doe], please drop these charges," and "[P]lease get these charges dropped[,] dude." He recognized that "[t]his call's being fuckin' recorded." In the second call, which began at 10:23 a.m., Malear told Doe, "[J]ust . . . drop – just go – just say you don't want nothin' to do with the charges – you don't want not – just wa . . . ." (Ellipses and punctuation in the original.) He also told Doe, "[W]hen they call you to go to court, don't go."

Malear testified that the point of calling Doe was "[t]o get information about why [he] was being put in jail." He testified that his "only objective" in making the calls was to prevent Doe from lying in court so that she would not be charged with a crime and risk the involvement of child welfare services.

Malear was charged with 12 counts: two counts each of injuring a spouse or cohabitant after a prior conviction (counts 1 and 6), assault with a deadly weapon (counts 2 and 8), and cruelty to a child by endangering health

(counts 3 and 10); and one count each of attempting to dissuade a witness (count 4), dissuading a witness from prosecuting a crime (count 5), carjacking (count 7), leaving the scene of an accident (count 9), distributing a private image to cause emotional distress (count 11), and stalking with a prior conviction (count 12).[3] In September 2019, Malear pleaded no contest to count 11, a misdemeanor charge that, like several of the other charges, was unrelated to the August 17 battery or August 19 phone calls.

The rest of the charges were tried, and a jury convicted Malear of misdemeanor battery of a cohabitant, a lesser included offense of count 1, and count 12, the stalking charge.[4] The jury also convicted Malear of the two counts based on the jail phone calls, counts 4 and 5. It acquitted him of the remaining seven charges. The trial court then found true allegations that Malear had a prior strike and two prior convictions resulting in a prior prison term.[5]

In November 2019, the trial court sentenced Malear to a total term of six years in prison, composed of a term of three years for felony stalking and

---

[3] The charges were brought under sections 273.5, subdivision (f)(1) (counts 1 and 6, injuring a cohabitant or spouse after a prior section 273.5 conviction), 245, subdivision (a)(1) (counts 2 and 8, assault with a deadly weapon), 273a, subdivision (b) (counts 3 and 10, cruelty to child by endangering health), 136.1(a)(2) (count 4, attempting to dissuade a witness), 136.1(b)(2) (count 5, dissuading a witness from prosecuting a crime), 215, subdivision (a) (count 7, carjacking), 647, subdivision (j)(4) (count 11, distributing a private image to cause emotional distress), 646.9, subdivision (c) (count 12, stalking with prior section 273.5 convictions), and Vehicle Code section 20001, subdivision (a) (count 9, leaving the scene of an accident).

[4] The conviction on count 1 was under section 243, subdivision (e)(1).

[5] The strike allegations were found true under sections 667 and 1170.12, and the allegations of a prior conviction with a prison term were found true under section 667.5, subdivision (b).

4

a consecutive term of three years for the prior strike. The sentence also included two concurrent three-year terms for counts 4 and 5, along with concurrent terms of one year each for the other two convictions. Two one-year terms for the prior convictions with a prison term were imposed and stayed.

II.
DISCUSSION

*A.      Section 136.1(a)(2) Is Not Unconstitutionally Vague.*

As we have said, Malear was convicted in count 4 of attempting to dissuade a witness in violation of section 136.1(a)(2). Under that provision, it is a crime to "[k]nowingly and maliciously attempt[] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." Under section 136, subdivision (1), malice is defined as "an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice."

Because of the malice element, the crime of attempting to dissuade a witness from testifying is a specific intent crime. (*People v. McDaniel* (1994) 22 Cal.App.4th 278, 284.) An American Bar Association model statute addressing witness intimidation, on which California's statute was based, "provided that the prosecution could show malice in either of two ways: proving the traditional meaning of malice (to vex, annoy, harm, or injure) or proving the meaning of malice that is unique to the statute (to thwart or interfere in any manner with the orderly administration of justice)." (*People v. Wahidi* (2013) 222 Cal.App.4th 802, 808–809 (*Wahidi*).) In *Wahidi*, which addressed whether there was substantial evidence to support a conviction under section 136.1(a)(2), the Court of Appeal concluded that by including the model statute's definition of malice in section 136, the California Legislature

5

envisioned a purposefully broad application of the malice element.  (*Wahidi*, at pp. 806, 809.)

Malear contends that section 136.1(a)(2) is vague on its face.[6]  He argues that the crime's malice element is "substantively meaningless in the context of prosecutions for this crime and lacking in any objective criteria." He further argues that the malice element "requires attempting to interfere with the 'orderly' administration of justice via witness dissuasion, but 'orderliness' in the administration of justice has no universally accepted or objective meaning."  We are not persuaded by these arguments.

The vagueness doctrine derives from the due process concept of adequate notice.  (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115.) "[D]ue process of law in this context requires two elements:  a criminal statute must ' "be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." ' "  (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567.)  When deciding if a criminal statute gives adequate notice of the prohibited conduct, "we are guided by the principles that 'abstract legal commands must be applied in a specific context,' and . . . the language used must have 'reasonable specificity.' "  (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890, italics omitted.)

In analyzing a vagueness claim, we begin with " 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears." ' " (*Williams v. Garcetti, supra*, 5 Cal.4th at p. 568.)  A statute is vague if it is

---

[6] The Attorney General agrees that although this claim was not raised in the trial court, Malear may assert it for the first time on appeal.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 885 [claim that probation condition was facially vague not forfeited by failure to object below].)

6

written such that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." (*Connally v. General Construction Co.* (1926) 269 U.S. 385, 391.) On the other hand, a statute " ' "cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' " (*Williams*, at p. 568.) The vagueness of a criminal statute can be mitigated with a specific intent requirement. (*People v. Maciel* (2003) 113 Cal.App.4th 679, 684.) However, if the specific intent requirement is described in the same vague terms as the criminal statute, the statute is still vague despite the specific intent requirement. (*People v. McCaughan* (1957) 49 Cal.2d 409, 414.)

Malear's vagueness claim fails for several reasons. To begin with, his conduct—i.e., telling Doe not to go to court when called—clearly falls within the bounds of section 136.1(a)(2), and "a defendant who falls 'squarely within' the reach of a statute lacks standing to challenge its vagueness as it 'might be hypothetically applied to the conduct of others.' " (*People v. Murphy* (2001) 25 Cal.4th 136, 149.) If we can give section 136.1(a)(2) a " ' "reasonable and practical construction" ' that accords with the drafters' probable intent and encompasses the defendant's conduct," then we need not "consider every conceivable situation that might arise under [the] statute's language." (*Murphy*, at p. 149.) Here, it is clear that section 136.1(a)(2), which prohibits knowing and malicious attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, covered Malear's conduct of telling Doe not to go to court. As a result, and because Malear "does not argue that [section 136.1(a)(2)] improperly prohibits a substantial amount of constitutionally protected conduct, he may not challenge it on vagueness grounds." (*Murphy*, at p. 149.)

7

In any case, even if we assume that Malear has standing, his arguments fail on the merits. The language of the conduct prohibited under 136.1(a)(2) is not so vague that reasonable people must guess at its meaning. "Unless the defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts, no crime has been committed under [section 136.1]." (*People v. McDaniel*, *supra*, 22 Cal.App.4th at p. 284.) So long as the defendant's actions are statements, even if ambiguous, that "reasonably may be interpreted as intending to achieve the future consequence of dissuading the witness from testifying, the offense has been committed." (*Wahidi*, *supra*, 222 Cal.App.4th at p. 806.)

Malear primarily relies on *Wahidi* in attempting to highlight the supposed problem with section 136's definition of malice. *Wahidi* recognized that the "definition of malice in section 136 appears to write the word 'maliciously' out of section 136.1." (*Wahidi*, *supra*, 222 Cal.App.4th at p. 807.) *Wahidi* explained: "[Section 136.1(a)(2)] makes it a crime to attempt to prevent a witness from testifying when the attempt is made with knowledge and malice. Substituting in the definition of malice from section 136, and recognizing that preventing a witness from testifying always interferes in some manner 'with the orderly administration of justice,' [section 136.1(a)(2)] makes it a crime to attempt to prevent a witness from testifying when the attempt is made with knowledge and with intent to prevent the witness from testifying." (*Ibid.*)

Malear reasons that section 136's broad definition of malice therefore means that all attempts at dissuading a witness are malicious, rendering the "malice" element of section 136.1(a)(2) "substantively meaningless." We disagree. Witnesses can be discouraged from testifying for all sorts of reasons unrelated to the aims of justice. (See, e.g., *People v. Brackins* (2019)

8

37 Cal.App.5th 56, 67 [section 136 malice definition might not apply to an employer who "prevented an employee from testifying at a proceeding if the employer was motivated by the desire to keep the employee at work rather than by a malicious desire to thwart the administration of justice"]; see also section 136.1, subd. (a)(3) ["For [the] purposes of this section, evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice"].) Further, although *Wahidi* recognized that section 136's definition of "malice" potentially wrote the term "maliciously" out of section 136.1(a)(2), the court relied on legislative history to interpret the latter term and ultimately concluded that there was sufficient evidence to support the finding that the defendant acted maliciously in attempting to dissuade a witness from testifying. (*Wahidi, supra,* 222 Cal.App.4th at pp. 807–809.)

Malear also argues that the term "orderly" used to describe the "administration of justice" is too abstract. He relies on *In re Davis* (1966) 242 Cal.App.2d 645 (*Davis*) in attempting to analogize the supposed vagueness of the term "orderly" with that of the term "decency." *Davis* does not aid him. The statute at issue in *Davis* made it a misdemeanor to commit any act " 'which openly outrages public decency.' " (*Id.* at p. 647.) The Court of Appeal agreed that the term "decency" was so abstract and without an agreed upon meaning that the statute gave "almost unlimited [executive] power to harass those with whose conduct or morals [the executive] is at odds." (*Ibid.*) In contrast, as a specific intent crime, section 136.1(a) excludes from its reach conduct that was committed without the requisite malice. Further, in *Davis*, the word "decency" was part of the crime itself (*Davis,* at p. 647), while here the phrase "interfering with the orderly administration of justice" goes to the required specific intent for the crime of attempting to

9

dissuade a witness but does not define the crime itself. Neither section 136.1(a)(2) nor the definition of malice under section 136 is unconstitutionally vague because specific-intent requirements mitigate vagueness concerns, and the terms defining the specific-intent requirement are not simply repeated from section 136.1(a)(2). (See *People v. McCaughan*, *supra*, 49 Cal.2d at p. 414; *People v. Maciel*, *supra*, 113 Cal.App.4th at p. 684.) Malear's vagueness claim fails.

B.  *Count 4 Is Not Subject to Stay Under Section 654.*

Malear also argues that the sentence for count 4 should be stayed under section 654. He believes that because the two phone calls were made in the course of the same criminal conduct and with the same intent and objective, they constitute a single act. He argues that as a result, imposing terms for both counts 4 and 5 violated section 654 because it amounted to multiple sentences for a single act. We agree with the Attorney General that the two phone calls were divisible acts and section 654 therefore does not apply.

Section 654, subdivision (a), states, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." An "act or omission" under section 654 includes "not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

" 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one

10

objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507, italics omitted.)  Even if directed to one objective, however, " 'multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm.' " (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717; see, e.g., *People v. Louie* (2012) 203 Cal.App.4th 388, 399 [15-minute pause between verbal threat and act of arson was sufficient time for defendants to reflect on their actions and renew their intent]; *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 (*Trotter*) [section 654 did not bar multiple punishments for gunshots fired within minutes of each other].)

A defendant's objective is generally a question of fact for the sentencing court.  (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)  If a court sentences a defendant to separate terms without making an express finding that the defendant had different intent or objectives, the court " 'is deemed to have made an implied finding each offense had a separate objective.' " (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 424–425.)  Here, although Malear argued in his sentencing memo that section 654 "prohibits punishment for more than one of the crimes that he was convicted of," the trial court did not explicitly refer to this argument at sentencing.  Accordingly, "we infer that the court made the finding appropriate to the sentence it imposed" and review that finding for substantial evidence.  (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045.)

As we have said, Malear made two separate phone calls where he told Doe two different things:  (1) get the charges dropped and (2) do not appear in court.  Because Malear said two different things in the two different phone calls, there is substantial evidence that he had two different objectives during

them, as the trial court implicitly found. (See *People v. Jimenez, supra,* 32 Cal.App.5th at pp. 424–425.)

Even if the calls were made with the same intent or objectives, the trial court's finding can also be affirmed on the alternative basis that there is substantial evidence that Malear had adequate time to reflect on his actions between the two calls. In arguing otherwise, Malear attempts to distinguish *Trotter*. In *Trotter*, the defendant stole a taxicab and fired three gunshots at a police officer during a high-speed chase on the freeway. (*Trotter, supra,* 7 Cal.App.4th at pp. 365–366.) The defendant was subsequently convicted of three counts of assault on a peace officer with a firearm and sentenced separately for two of the three counts. (*Id.* at p. 365.) The Court of Appeal held that section 654 did not bar the two separate sentences for two of the shots, as each assault was "volitional and calculated, and [was] separated by periods of time during which reflection was possible." (*Trotter,* at p. 368.)

While agreeing with *Trotter*'s holding, Malear argues that the nature of the conduct here was less severe and therefore warrants a different outcome. We recognize that there is a difference between shooting at a police officer and making phone calls, but Malear provides no authority to suggest that the section 654 analysis depends on the type of risk created by the acts, not just the amount of time the defendant had to reflect between the two acts. Therefore, even if the two calls had the same objective, there was sufficient time between them for Malear to reflect on his actions. Thus, the trial court did not err by declining to stay the sentence on count 4 under section 654.

C.    *The Abstract of Judgment Must Be Corrected.*

At sentencing, the trial court imposed and stayed a court operations assessment fee of $200 under section 1465.8, which requires a fee of $40 per conviction. The court also imposed and stayed a criminal conviction

12

assessment fee of $150 under Government Code section 70373, which requires a fee of $30 per conviction.  The abstract of judgment, however, incorrectly lists the court operations assessment fee as $300 and the conviction assessment fee as $250.  The parties agree that the abstract, while adequately describing both fees as stayed, must be corrected to specify the correct amount of each fee.  We therefore order that the abstract be amended to specify that the court operations assessment fee is $200, and the criminal conviction assessment fee is $150.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

### III.
#### DISPOSITION

The trial court is directed to amend Malear's abstract of judgment to reflect a court operations assessment fee of $200 and a criminal conviction assessment fee of $150.  The court is also directed to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

_____

Humes, P.J.


WE CONCUR:



_____

Banke, J.



_____

Sanchez, J.


*People v. Malear*  A159659

14