Filed 10/24/23  P. v. Hunter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NORVEL HUNTER,<br><br>    Defendant and Appellant. | D081000<br><br><br>(Super. Ct. No. SCS313955) |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Affirmed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Norvel Hunter appeals his conviction for willful failure to appear in court while on bail under Penal Code section 1320.5 on two grounds.

First, he challenges the sufficiency of the evidence that his absence from court was both willful and intended to evade the court process. But the parties' stipulation that Hunter missed court "after being ordered to appear" and returned only once "brought into custody by means of a bench warrant" allowed the jury to reasonably infer that Hunter purposefully failed to appear with the requisite mental state.

Second, Hunter contends that the trial court gave "conflicting" instructions about the mental-state elements of the crime. The trial court improperly omitted failure to appear from the list of specific-intent crimes, but that error was harmless because the specific instructions on the elements of failure to appear informed the jury of the required mental state.

We therefore affirm the judgment.

## I.

In addition to other felony charges, the People charged Hunter with willful failure to appear at his original trial date to evade the process of court while on bail. (Pen. Code, § 1320.5.)

At trial, the parties stipulated to two facts related to this charge. First, in April 2022, Hunter, "while released on bail, failed to appear at his jury trial date after being ordered to appear by the court." Second, Hunter "did not return to the court for a period of longer than 14 days and was eventually brought into custody by means of a bench warrant." The jury was told that these stipulated facts were "deemed to have been conclusively proven." The parties presented no other evidence related to this charge.

When giving jury instructions, each time the trial court addressed mental state or intent generally, it also directed the jury to the specific instructions for each crime. In giving CALCRIM No. 225, the trial court instructed that "[t]he People must prove not only that [Hunter] did the acts

2

charged, but also that he acted with a particular intent and/or mental state. The instruction[ ] for each crime explains the intent and/or mental state required." Turning to types of intent, in CALCRIM No. 252, the trial court advised that "the crimes and allegations charged in this case require proof of the union or joint operation of act and wrongful intent." It identified two charges as specific-intent crimes and "[a]ll the other crimes"—including failure to appear—as "requir[ing] a general criminal intent." For those general-intent crimes, the jury was told that "[t]he act required is explained in the instruction for that crime."

The trial court outlined the specific elements required to find Hunter guilty of failure to appear—including the requisite mental state—in CALCRIM No. 3001. Relevant here, the trial court instructed that the People must prove that Hunter: (1) "willfully failed to appear in court as required" and (2) "did so in order to evade the process of the court." It explained that "[s]omeone commits an act willfully when he or she does it willingly or on purpose." If the jury found that Hunter "willfully failed to appear within 14 days of the date assigned for appearance," the jury could, but was not required to, "infer that the failure to appear was for the purpose of evading the process of the court." (See Pen. Code, § 1320.5.)

During closing arguments, both parties emphasized that "willfully," as applied to Hunter willfully failing to appear at his original trial date, meant "on purpose." When discussing purpose to evade, the prosecutor told the jury that, under the "14-day rule," "if someone misses court for over 14 days[,] you may conclude that they did so in order to evade court."

The jury found Hunter guilty of failure to appear in violation of Penal Code section 1320.5.

II.

Hunter raises two issues on appeal. First, he argues the parties' stipulation was insufficient to establish that Hunter failed to appear at his original trial date (1) willfully and (2) for the purpose of evading the process of court. Second, Hunter contends the trial court gave conflicting instructions on the mental state required for failure to appear that "prejudicially confused at least one juror." For the reasons discussed below, we disagree on both points.

A.

When assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to decide if substantial evidence—reasonable, credible evidence of solid value, even if circumstantial—would allow a rational factfinder to find the defendant guilty beyond a reasonable doubt. (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) During our review, we "must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

Here, the only facts the jury received as to failure to appear came from the parties' stipulation. The record establishes that Hunter missed his jury trial date "after being ordered to appear." Hunter asserts that "the mere fact an order was issued is not circumstantial evidence [he] knew of that order." To try to create that specter of doubt, however, he relies on evidence not presented to the jury about Hunter's absence from the hearing when the trial date was set. That argument does not persuade us for two reasons. First, it relies on evidence outside the trial record. Second, it makes no difference because Hunter's counsel, who appeared on his behalf at the trial-setting hearing, "had an ethical duty to inform his client of all material proceedings

4

in the case," including the trial date.  (*People v. Jimenez* (1995) 38 Cal.App.4th 795, 802-803.)  Thus, the jury could reasonably conclude from the stipulation that Hunter knew that he was supposed to appear for trial.

Next, although the stipulation did not directly address willfulness, it contained facts from which the jury could reasonably infer that Hunter both willfully failed to appear and did so to evade the court process.  Significantly, Hunter did not return to court until taken "into custody by means of a bench warrant."  The involuntary nature of Hunter's return—via arrest—is substantial circumstantial evidence that he purposefully chose not to attend his trial date with the goal of evading the court process.  The jury could draw this conclusion even without considering the length of Hunter's absence, and we "presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  Thus, while Hunter is correct that he did not need to affirmatively present evidence to explain his absence, the record supports the jury's conviction on this charge.

B.

Next, Hunter contends that the trial court prejudicially erred when it instructed the jury that failure to appear is a general-intent crime in CALCRIM No. 252.

1.

The People argue that Hunter forfeited this claim because he did not object to the instruction during trial.  In support, they rely on cases where the instruction correctly stated the law.  But Hunter contends that CALCRIM No. 252's instruction that failure to appear is a general-intent crime was an *incorrect* statement of law.  We agree with Hunter, and thus conclude that

this issue is preserved for appeal even absent an objection at trial. (*People v. Mason* (2013) 218 Cal.App.4th 818, 823 (*Mason*).)

2.

We independently review claims of instructional error. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) We look at the instructions and trial record as a whole and consider the challenged instruction in that context. (*People v. Mills* (2012) 55 Cal.4th 663, 680 (*Mills*).) Where reasonably possible, we interpret the instructions to support the judgment. (*Mason*, *supra*, 218 Cal.App.4th at p. 825.)

Failure to appear is a specific-intent crime. (*People v. Wesley* (1988) 198 Cal.App.3d 519, 522.) The individual must (1) intend to fail to appear (2) for the purpose of evading the process of court. (*Ibid.*; Pen. Code, § 1320.5.) When instructing the jury on CALCRIM No. 252 here, however, the trial court did not identify failure to appear as a specific-intent crime. Instead, it grouped that charge with "[a]ll the other crimes and allegations" that "require a general criminal intent."

The People concede error but argue that it was harmless because the trial court later instructed the jury on the specific intent required for failure to appear.

We conclude that the general-intent instruction in CALCRIM No. 252, though erroneous to the extent it included failure to appear, was not "burden-reducing" as Hunter claims. We find the rationale in *People v. Lyons* (1991) 235 Cal.App.3d 1456 (*Lyons*) persuasive. There, the effect of the general-intent instruction "turn[ed] upon the substantive elements of the offense to which it [wa]s applied." (*Id.* at p. 1462.) Because the instruction on the elements of the crime "conveyed the correct intention" required, the

6

"erroneous instruction on general intent could not have deflected the jury from" the proper mental state. (*Id.* at pp. 1462-1463.)

So too here. CALCRIM No. 252 relies on the crime-specific instructions to explain the "act required." Similarly, CALCRIM No. 225, also given here, reminds the jury that the "instruction for each crime explains the intent and/or mental state required." And the controlling crime-specific instruction, CALCRIM No. 3001, made clear that the jury had to find that Hunter failed to appear (1) willfully and (2) to evade the court process to convict. As "jury instructions of a specific nature control over instructions containing general provisions," the instructions here held the People to their burden of proving the necessary specific intent. (*People v. Stewart* (1983) 145 Cal.App.3d 967, 975.) Hunter tries to distinguish *Lyons* on its purportedly stronger evidence of specific intent. But in so doing, he brushes aside without addressing the relevant holding—that the instruction on general intent "was error but patently harmless" because it required the jury to find the mental state set forth in the crime-specific instruction. (*Lyons*, *supra*, 235 Cal.App.3d at p. 1463.)

At most, the erroneous inclusion of failure to appear in the general-intent instruction created ambiguity. "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." (*Mills*, *supra*, 55 Cal.4th at p. 677.) We consider if there is a "reasonable likelihood" that the jury misunderstood or misapplied the instruction. (*People v. Smithey* (1999) 20 Cal.4th 936, 963.) Here, it is unlikely that the jury misunderstood the required intent because the trial court correctly explained the intent elements in the crime-specific instruction.

Moreover, the prosecutor did not "downplay[ ] its burden of proof in closing argument." When discussing the inference of evasion the jury may

draw from a 14-day *willful* failure to appear (Pen. Code, § 1320.5), the prosecutor discussed "someone miss[ing] court" or "not show[ing] up to court" without specifying willfulness. That omission, however, did not direct the jury to presume "willful intent." Before discussing the 14-day rule, the prosecutor repeatedly reminded the jury, consistent with CALCRIM No. 3001, that "willfully" in "willfully failed to appear in court . . . means on purpose." After, the prosecutor argued that Hunter getting "picked up on a bench warrant" showed "he did this to willfully evade the court process." Taken together, we conclude that the instructions and argument did not lower the burden of proof. As a result, they did not violate due process.

Because the instructions did not violate due process, we assess prejudice under the *Watson* standard. (*People v. Beltran* (2013) 56 Cal.4th 935, 955.) For the reasons discussed above about the sufficiency of the evidence, it is not reasonably probable that Hunter would have obtained a more favorable result had the trial court identified failure to appear as a specific-intent crime in CALCRIM No. 252.

III.

We affirm the judgment.

CASTILLO, J.

WE CONCUR:


KELETY, Acting P. J.


RUBIN, J.

8