Filed 10/27/23  P. v. Murray CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DUSTIN MURRAY,<br><br>Defendant and Appellant. | F084628<br><br>(Super. Ct. No. LF013543A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Dustin Murray was convicted of attempted burglary (Pen. Code, §§ 664, 460, subd. (a)), petty theft (§ 488), dissuading a witness from making a report (§ 136.1, subd. (b)(1)) and dissuading a witness from causing arrest (§ 136.1, subd.

(b)(3)). (Undesignated statutory references are to the Penal Code.) Defendant contends: (1) there is insufficient evidence to support both witness dissuasion convictions; (2) the trial court failed to properly instruct the jury on the mental state for dissuading a witness from causing arrest; (3) the court should have granted defense counsel's motion for a mistrial after three jurors learned of defendant's prior conviction; and (4) the case must be remanded for resentencing because the sentence was unlawfully constructed.

The People respond that: (1) there is sufficient evidence to support the two witness dissuasion convictions; (2) the trial court's instructional error on the mental state for dissuading a witness from causing arrest was harmless; (3) the court properly denied defendant's request for a mistrial due to three jurors learning he had a prior conviction; and (4) defendant's challenge to his sentence is forfeited and lacks merit because the sentence was lawful.

We conclude the trial court committed prejudicial instructional error requiring reversal of defendant's conviction for dissuading a witness from causing arrest under section 136.1, subdivision (b)(3). Because we reject defendant's insufficiency of the evidence claim on that offense, the People may retry defendant upon remand. In all other respects, the judgment is affirmed.

## PROCEDURAL SUMMARY

On June 9, 2022, the Kern County District Attorney filed an amended information charging defendant with: attempted burglary (§§ 664, 460, subd. (a); count 1); dissuading a witness from giving testimony (§ 136.1, subd. (a)(1); count 2); petty theft (§ 488; count 3); dissuading a witness from making a report (§ 136.1, subd. (b)(1); count 4); and dissuading a witness from causing arrest (§ 136.1, subd. (b)(3); count 5). The information also alleged defendant had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) which also qualified as a serious felony conviction (§ 667, subd. (a)).

On June 10, 2022, the jury found defendant guilty on counts 1, 3, 4 and 5, but not

2.

guilty on count 2. The jury also found true that defendant acted maliciously and used or threatened to use force when intimidating a victim or witness for purposes of counts 4 and 5 in violation of section 136.1, subdivision (c). In a bifurcated trial, the jury found the prior felony conviction allegation true.

On July 12, 2022, the trial court denied defendant's motion to dismiss his prior strike conviction (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*)) and his motion to strike the five-year enhancement. The court sentenced defendant to 13 years as follows: on count 1, four years (the middle term of two years, doubled due to the prior strike conviction), plus a five-year serious felony conviction enhancement; on count 4, four years (the middle term of two years, doubled due to the prior strike conviction) consecutive to count 1; the middle term of four years on count 5, stayed per section 654; and 180 days in county jail on count 3 to be served concurrently.

Defendant filed a timely notice of appeal on the day he was sentenced.

## FACTUAL SUMMARY

At about 8:00 a.m. on September 11, 2021, Edgar M. was asleep in his home with his wife and their four children when his dogs started barking. Edgar's wife woke Edgar up. Edgar and his wife looked out the bedroom window and saw somebody jumping over their backyard fence. Edgar started to put clothes on and walked towards the kitchen door. He saw defendant trying to push open the sliding glass door but a stick in the track of the door prevented the door from opening. Edgar had seen defendant before around town and had given him food. Edgar saw defendant attempt to pull the door open about 10 times. Defendant's attempts to open the door damaged the door's locking mechanism. After he was unable to open the door, defendant grabbed an electronic speaker in the backyard and started walking towards the side of the house.

Edgar went out the front door and confronted defendant outside his house. Defendant still had the speaker from the backyard. Edgar told defendant "that's my speaker" and asked defendant "what the f[**]k" he was doing." Defendant left the

3.

speaker and walked away. Edgar waited until defendant exited through the house front gates and then called 911. Edgar got into his vehicle and followed defendant down the street, staying "a safe distance" away in his car.

Kern County Sheriff's Deputies Jaime Alarcon and Steven Davis were dispatched in response to Edgar's 911 call. Edgar and a bystander waved to Alarcon to get his attention when he arrived where defendant was walking down the street. Alarcon pulled up in his patrol vehicle shortly before Davis. Edgar identified defendant to Alarcon by saying "something to [the] effect" of "that's him." Alarcon asked defendant, "[H]ey, can I talk to you?" Defendant turned towards Alarcon in a manner Alarcon considered aggressive and loudly said "something like … 'what do you want.'" Alarcon told defendant, "Please hands behind your head, turn around." Defendant complied. Alarcon handcuffed defendant and put him in the back seat of his patrol vehicle. The patrol vehicle's doors lock from the outside every time they are closed. Alarcon said to defendant "something to [the] effect" that he was "still doing [his] investigation and this is just investigative detention."

Alarcon went to speak with Edgar about 15 feet away from where his vehicle was parked. Edgar confirmed to Alarcon that defendant was the person who tried to break into his house. Alarcon believed defendant could hear him and Edgar talking at certain points. While Alarcon and Edgar were talking, defendant was yelling at Edgar from the partially lowered window of Alarcon's vehicle. Defendant was cussing and yelled at Edgar, "'I know where you live. I'm going to kill you.'" Edgar testified to defendant making these statements, but Alarcon did not hear defendant say, "I'm going to kill you." Alarcon heard defendant say to Edgar several times, "'You're a b[**]ch and I'm going to get you for this.'" Alarcon had not yet told defendant he was under arrest before defendant said this to Edgar. Alarcon heard defendant call Edgar a "b[**]ch" "maybe two minutes after" he put defendant in his patrol vehicle. Edgar took this "possibly" as a threat for getting defendant arrested. Edgar told Alarcon he believed defendant made

4.

these statements to dissuade him from making a report and to possibly later testifying. Defendant was banging on the patrol vehicle from inside while Alarcon and Edgar were talking. Defendant made several threats against Edgar until Alarcon told him to be quiet.

Alarcon's interview with Edgar took 15 to 20 minutes during which defendant remained in Alarcon's patrol vehicle. Alarcon was on the scene for 25 to 35 minutes before he drove defendant to the central receiving facility in Bakersfield. Alarcon explained to defendant why he was under arrest while enroute to the jail. Alarcon asked defendant if he tried to enter Edgar's residence and defendant confirmed that he did.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant contends there is insufficient evidence to support the convictions for dissuading a witness from reporting a crime (count 4) and dissuading a witness from causing arrest (count 5).

#### A. Standard of Review

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime … beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we

5.

look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *People v. Johnson* (1980) 26 Cal.3d 557, 562; *Jackson v. Virginia* (1979) 443 U.S. 307, 317–320.)

The same standard governs in cases where the prosecution relies on circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*Ibid.*) "'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio*, *supra*, 43 Cal.4th at pp. 357–358.)

## B.     Dissuasion Crimes Under Section 136.1

Section 136.1 prohibits victim or witness dissuasion. (*People v. Hallock* (1989) 208 Cal.App.3d 595, 606 (*Hallock*).) "Subdivision (b) [of section 136.1] prohibits preventing or dissuading a witness or victim from (1) reporting the victimization; (2) causing a complaint or similar charge to be sought; and (3) arresting or causing or seeking the arrest of any person in connection with such victimization." (*Ibid.*; see § 136.1, subd. (b)(1)–(3).) Section 136.1, subdivision (b) is a wobbler offense. (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.) "Specific intent is required for all violations of section 136.1." (*People v. Brackins* (2019) 37 Cal.App.5th 56, 66; accord, *People v. Young* (2005) 34 Cal.4th 1149, 1210.)

### 1.    *Dissuading a Victim from Causing or Seeking Arrest*

Section 136.1, subdivision (b)(3) criminalizes attempting to prevent or dissuade a crime victim or witness from "[a]rresting or causing or seeking the arrest of any person in connection with that victimization."  Defendant argues his threats could not have been intended to prevent or dissuade Edgar from causing his arrest because he was already under arrest once he was handcuffed and in the back of Alarcon's patrol vehicle.  Defendant also argues his threats were not specific enough to support his conviction for dissuading a victim from causing his arrest.

### a.    **Definition of "Arrest" in Section 136.1, Subdivision (b)(3)**

Defendant contends he threatened Edgar after his arrest had already occurred based on the statutory definition of "arrest" in section 834.  The People respond defendant had not been arrested yet before his threats, but rather, had only been detained by Alarcon for investigation.

Although defendant challenges the sufficiency of the evidence to support his conviction under section 136.1, subdivision (b)(3), the core question he raises is one of statutory interpretation.  "Issues of statutory interpretation are questions of law subject to de novo review." (*People v. Simmons* (2012) 210 Cal.App.4th 778, 790.)  "'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]'  [Citation.]  '"When the language of a statute is clear, we need go no further." [Citation.]  But where a statute's terms are unclear or ambiguous, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part."'" (*People v. Harrison* (2013) 57 Cal.4th 1211, 1221–1222.)

Defendant relies on *People v. Reynoza* (2022) 75 Cal.App.5th 181, review granted May 11, 2022, S273797.  In *Reynoza*, the defendant was convicted of witness dissuasion to prevent a complaint from being filed under section 136.1, subdivision (b)(2).  (*Reynoza*, at p. 184.)  On appeal, Reynoza argued he could not be guilty of attempting to prevent or dissuade the witness from causing a complaint to be filed because the charged conduct occurred after the complaint had already been filed.  (*Id.* at p. 185.)  The court of appeal agreed.  The court held that "the words '[c]ausing a complaint … to be sought' in section 136.1[, subdivision (b)(2)] refer to attempts to prevent a complaint from being filed.  If the defendant knows a complaint has already been filed and does not attempt to prevent or dissuade the witness from causing any further or amended complaint to be filed, an essential element of the offense is missing." (*Id.* at pp. 183–184.)  The court reasoned Reynoza's conduct "occurred after a complaint had already been filed in the underlying prosecution." (*Id.* at p. 187.)  Since the evidence showed Reynoza was aware the complaint had already been filed, the court concluded he could not have violated section 136.1, subdivision (b)(2).  (*Reynoza*, at p. 189.)

The "language of section 136.1 focuses on an unlawful goal or effect." (*People v. Salvato* (1991) 234 Cal.App.3d 872, 883.)  Although the defendant in *People v. Reynoza* was convicted of witness dissuasion under section 136.1, subdivision (b)(2), the court's analysis indicates that whether the event to be evaded in violating section 136.1—the unlawful goal or effect—has already occurred or may recur affects whether a defendant may be convicted under the statute.  The plain language of section 136.1, subdivision (b)(3) shows defendant's threats cannot reasonably have been intended to prevent or dissuade Edgar from causing his arrest if defendant was already under arrest.  The question remains whether defendant was in fact under arrest before he threatened Edgar.

Section 136.1 does not define "arrest."  Defendant relies on the statutory definition of arrest in section 834 as "taking a person into custody, in a case and in the manner authorized by law," and Black's Law Dictionary's definition of "physical custody" as

8.

"'[c]ustody of a person (such as an arrestee) whose freedom is directly controlled and limited.'" Applying these definitions, defendant argues he was in physical custody and thus, arrested, once Alarcon handcuffed him and put him in the patrol vehicle. The People respond defendant was not under arrest, but rather was in investigative detention at that point based on the distinction between "detention" and "arrest" reflected predominantly in search and seizure claims under the Fourth Amendment. Defendant acknowledges the distinction between detention and arrest can be important under the Fourth Amendment but argues it is reasonable to interpret "arrest" in section 136.1, subdivision (b)(3) "under the general statutory definition" in section 834.

The jury was instructed on the witness dissuasion counts pursuant to CALCRIM No. 2622. Other pattern jury instructions offer definitions of "arrest" to be used as relevant to the applicable crimes. (See, e.g., CALCRIM No. 2670, Lawful Performance: Peace Officer [includes definition of "unlawful arrest"].) CALCRIM No. 2622, however, does not offer a pinpoint instruction defining "arrest," nor was the jury here provided with a definition of "arrest" in their instructions. The jury instructions included CALCRIM No. 200 with the following: "Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings."

The common definition of "arrest" is "the taking or detaining of a person in custody by authority of law." (Webster's 3d New Internat. Dict. (1986) p. 121.) We do not discern a meaningful distinction between the common definition of arrest and the definition in section 834 for purposes of applying section 136.1.[1] Under either definition,

---

[1] Defendant does not specifically argue that "arrest" has a technical legal meaning such that the jury should have been instructed on its definition. To the extent his arguments may be construed this way, the contention is unpersuasive. "When a word or phrase "'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.'" [Citations.] A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning." (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) The word "arrest" as used in section 136.1, subdivision (b)(3) does not have a technical legal meaning that departs from its nonlegal

9.

whether defendant was already arrested before he threatened Edgar was a question of fact to be determined by the jury. (Evid. Code, § 312; *People v. Posey* (2004) 32 Cal.4th 193, 207 ["questions of fact relating to the substantive issue of guilt or innocence are within the province of the jury"].) Defendant goes a step further by arguing that once he was placed in "physical custody" his arrest was a fait accompli. We disagree. (Moreover, to the extent defendant is arguing he was arrested as a matter of law, we reject this contention as discussed in the next part.)

Whether defendant had already been arrested before he threatened Edgar was a contested issue at trial. Defense counsel questioned Deputy Alarcon about whether defendant was "under arrest at that point" when he was handcuffed and placed in the patrol vehicle. Alarcon denied defendant was under arrest since he had not "really" spoken to Edgar before putting defendant in the patrol vehicle. Alarcon confirmed telling defendant "something to [the] effect" that he was "still doing [his] investigation" and "this is just investigative detention." He also testified defendant called Edgar a "b[**]ch" as soon as Alarcon put defendant in the car and before Alarcon arrested him. Alarcon conceded defendant had "no reasonable way to escape the patrol car" while he was handcuffed with the vehicle's door locked. Alarcon explained to defendant why he was being arrested enroute to the jail. In closing argument, defense counsel questioned whether defendant was already arrested: "And [defendant] once again is handcuffed, locked in the back of a patrol car. I think a reasonable person in [defendant's] position would think they are under arrest at that point."

A rational juror could conclude defendant was not yet under arrest before he threatened Edgar. The jury presumably found Alarcon's testimony credible and we "do

<hr />

meaning such that clarification in the instructions would have been necessary. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1022.) Accordingly, if defendant "believed that the instruction was incomplete or needed elaboration" because it did not define arrest, "defendant was required to request an additional or clarifying instruction." (*People v. Maury*, *supra*, 30 Cal.4th at p. 426.)

not question the credibility of a witness's testimony, so long as it is 'not inherently improbable.'" (*People v. Navarro* (2021) 12 Cal.5th 285, 302.)

We acknowledge the evidence permits an inference defendant may have believed he was already under arrest once he was placed in the patrol vehicle in handcuffs and thus, his threats were only intended to dissuade Edgar from making a report, not to prevent his arrest. In other words, while defendant may have violated section 136.1, subdivision (b)(1) by discouraging Edgar from making a report as charged in count 4, he did not violate subdivision (b)(3) with respect to causing his arrest if he believed he was already arrested. However, there is no evidence regarding whether defendant believed he was already under arrest before threatening Edgar. In reviewing the sufficiency of the evidence, we "must view the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1019.) In the absence of any evidence defendant believed he was not yet under arrest, a rational juror could infer defendant believed he could still prevent his arrest by threatening Edgar. This is a valid hypothesis upon which a jury could find defendant guilty under section 136.1, subdivision (b)(3). (*People v. Zamudio*, *supra*, 43 Cal.4th at p. 357.) We may not usurp the jury's factfinding role on review. (*People v. Towler* (1982) 31 Cal.3d 105, 118 ["even though the appellate court may itself believe that the circumstantial evidence might be reasonably reconciled with the defendant's innocence, this alone does not warrant interference with the determination of the trier of fact"].)

Viewing the evidence in the light most favorable to the prosecution, a rational juror could infer defendant was not yet arrested and thus, his threats were at least in part intended to discourage Edgar from causing his arrest.

### b. Arrested as a Matter of Law

Defendant essentially argues there is insufficient evidence he was arrested as a matter of law. While defendant did not raise a constitutional claim regarding his arrest, Fourth Amendment search and seizure law provides a useful analytical framework to determine whether defendant was already arrested as a matter of law rather than detained before he threatened Edgar. (See, e.g., *United States v. Buffington* (9th Cir. 1987) 815 F.2d 1292, 1300 [whether a stop was a de facto arrest is a question of law under 4th Amend. law subject to de novo review].)

Handcuffing defendant and placing him in the patrol vehicle undoubtedly constituted a seizure. "A seizure occurs whenever a police officer 'by means of physical force or show of authority' restrains the liberty of a person to walk away." (*People v. Souza* (1994) 9 Cal.4th 224, 229; accord, *Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16.) "Such a seizure is normally characterized as either a 'detention' or an 'arrest.'" (*People v. Soun* (1995) 34 Cal.App.4th 1499, 1515.) While "a detention is subsumed by an arrest because an arrest cannot occur without an initial detention …, the converse is not true; a detention may occur without an arrest." (*Evans v. City of Bakersfield* (1994) 22 Cal.App.4th 321, 330.)

"When the seizure of a person amounts to an arrest, it must be supported by an arrest warrant or by probable cause." (*People v. Celis* (2004) 33 Cal.4th 667, 673.) "[A]n officer who lacks probable cause to arrest can conduct a brief investigative detention when there is '"some objective manifestation" that criminal activity is afoot and that the person to be stopped is engaged in that activity.'" (*Id.* at p. 674.) There is no bright line to distinguish when an investigatory detention ""'crosses the line and becomes an arrest.'"" (*Ibid.*) "'Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably

12.

available under the circumstances.' [Citations.] Important to this assessment, however, are the 'duration, scope and purpose' of the stop." (*Id.* at pp. 674–675.)

Alarcon was justified in stopping defendant to investigate the suspicion of criminal activity after Edgar identified him as the attempted burglar. (*People v. Souza*, *supra*, 9 Cal.4th at p. 230; *People v. Soun*, *supra*, 34 Cal.App.4th at p. 1516.) Alarcon testified he found defendant's initial manner to be aggressive when he approached defendant. An officer is "'authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" (*Soun*, at p. 1519.) Handcuffing a suspect during a detention is "sanctioned in cases where the police officer has a reasonable basis for believing the suspect poses a present physical threat or might flee." (*People v. Stier* (2008) 168 Cal.App.4th 21, 27.) Alarcon reasonably determined that defendant's initially aggressive manner and reported flight from the attempted burglary necessitated handcuffing and placing defendant in the patrol vehicle while Alarcon conducted his investigation. Handcuffing defendant and putting him in the patrol vehicle did not convert the detention into a de facto arrest. (*Soun*, *supra*, at p. 1517 [defendant was only detained when he was handcuffed, put on the ground, placed in a patrol vehicle and driven to a parking lot three blocks away]; *People v. Celis*, *supra*, 33 Cal.4th at pp. 674–676 [stopping defendant, handcuffing him and having him sit on the ground for a few minutes was only an investigative detention]; *In re Carlos M.* (1990) 220 Cal.App.3d 372, 384–385 [detention was not a de facto arrest where defendant was subjected to a patdown search, handcuffed and transported to a hospital].) Alarcon testified defendant called Edgar a "b[**]ch" "maybe two minutes after" he put defendant in his patrol vehicle. Defendant continued to verbally threaten Edgar and bang the patrol vehicle from inside while Alarcon and Edgar were talking. Defendant's hostile behavior provided a reasonable basis for his continued detention in the car in handcuffs to protect Edgar and maintain the status quo until Alarcon completed his investigation into whether there was probable cause for defendant's arrest. The

13.

duration of the stop was reasonable since Alarcon testified he was on the scene for 25 to 35 minutes before he drove defendant to jail, with 15 to 20 minutes of that time spent talking with Edgar about defendant's crimes. This amount of time was "'no longer than [was] necessary to effectuate the purpose of the stop.'" (*Soun*, *supra*, at p. 1516.) Considering the "totality of the circumstances" surrounding the stop, defendant was detained, not arrested before he threatened Edgar. (*Souza*, *supra*, at p. 231.)

### c.      Specificity of Defendant's Threats

Defendant also contends his threats were not specific enough to support his conviction for dissuading Edgar from causing arrest. Defendant relies on *Hallock* in support of this contention. In *Hallock*, the defendant told an attempted rape victim "'if you tell anybody anything that happened tonight here … I'll blow your house up.'" (*Hallock*, *supra*, 208 Cal.App.3d at p. 598.) The defendant made this threat just after the victim escaped and before the police were called. (*Id*. at pp. 598–599.) The defendant was charged with dissuading a witness from reporting a crime under section 136.1, subdivision (b), but the jury was instructed on dissuading a witness from giving testimony under subdivision (a) of the statute. (*Hallock*, at p. 607; [§ 136.1, subd. (a) prohibits preventing or dissuading, or attempting to prevent or dissuade "any witness or victim from attending or giving testimony at any trial." (§ 136.1, subd. (a)(1), (2)].)

On appeal, this court rejected the People's argument the defendant could have been found guilty under either statutory subdivision. (*Ibid.*) Because the threat was made at the time of the original crime, we reasoned the threat "could only reasonably have been believed to have been directed at reporting the crime to the police," and it was "unreasonable to conclude that defendant was concerned with testimony at a future trial for a crime for which he had not yet been arrested." (*Ibid*.) We found the evidence supported the charged offense of dissuading a witness from reporting a crime under

14.

section 136.1, subdivision (b)(1), but not sufficient to support a charge of dissuading a witness from giving testimony under subdivision (a). (*Hallock*, at p. 610.)

Defendant argues his threats were unconditional and made no mention of his arrest, unlike the defendant in *Hallock* who specifically threatened to blow up the victim's house "if you tell anybody." Intent to dissuade a witness from causing or seeking the arrest of any person may be inferred not just from the words the defendant used, but also from the surrounding circumstances. (*People v. Wahidi* (2013) 222 Cal.App.4th 802, 809; *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340 ["whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone"].) "The parties' history can also be considered as one of the relevant circumstances." (*Mendoza*, *supra*, at p. 1340.) "If the defendant's actions or statements are ambiguous, but reasonably may be interpreted as intending to achieve the future consequence of dissuading the witness," the "offense has been committed." (*Wahidi*, *supra*, at p. 806.)

Contrary to defendant's argument, *Hallock* does not require his threat against Edgar to specifically refer to defendant's arrest to support his conviction for dissuasion under section 136.1, subdivision (b)(3). In *Hallock*, this court found insufficient evidence the defendant's statement could be targeted toward the victim's trial testimony because the defendant made the threat when he committed the crime and before he had even been arrested. Potential trial testimony was too attenuated from the defendant's threat. There is "'no talismanic requirement that a defendant must say "Don't testify" or words tantamount thereto, in order to commit'" an offense under section 136.1. (*People v. Mendoza*, *supra*, 59 Cal.App.4th at p. 1344.) Here, defendant threatened Edgar just after Edgar had identified defendant to the police. Defendant made repeated threats while Edgar spoke with Deputy Alarcon about defendant's attempted burglary and theft.

15.

Defendant also said, "I know where you live" to Edgar. Under these circumstances, a rational juror could infer defendant's threats that he was "going to kill" Edgar and "get [him] for this" was intended to dissuade Edgar from detailing his crimes to the police and causing his arrest. Defendant's specific reference to "get[ting him] for this" reasonably alluded to Edgar's contemporaneous disclosure to the police of defendant's criminal activity.

Defendant acknowledges this offense does not require the victim believed the threat was intended to prevent his arrest, but nonetheless argues Edgar testified he did not think defendant was trying to prevent him from seeking his arrest. Edgar testified defendant threatened him "as [he] was making the report," but he "just took them as threats." Irrespective of Edgar's own interpretation of defendant's threats, a rational juror could interpret defendant's threats to kill Edgar and to "get" him for "this" while Edgar was talking to Alarcon as an attempt to dissuade him from causing defendant's arrest.

There is substantial evidence to support defendant's conviction under section 136.1, subdivision (b)(3) on count 5 and we reject defendant's contentions to the contrary.

### 2. Dissuading a Victim from Reporting a Crime

"Section 136.1[, subdivision (b)(1)] criminalizes trying to dissuade a victim from reporting a crime." (*People v. Upsher*, *supra*, 155 Cal.App.4th at p. 1320.) "To prove a violation of section 136.1, subdivision (b)(1), the prosecution must show (1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of his or her victimization to any peace officer or other designated officials." (*Ibid*.)

Defendant argues he "could have said, 'I'll get you, *if you make a report*'" but instead he made unconditional threats to Edgar to vent and express his frustrations. Defendant again urges an overly narrow view of his statements to Edgar. A rational juror

16.

could infer from the circumstances defendant intended to discourage Edgar from making a report of his crimes to Alarcon by his threats.[2] (*People v. Wahidi*, *supra*, 222 Cal.App.4th at p. 809; *People v. Mendoza*, *supra*, 59 Cal.App.4th at p. 1340.) Edgar had just identified defendant to Alarcon as the suspect and remained present while Alarcon put defendant in his patrol vehicle. Alarcon and Edgar both heard defendant say to Edgar, "'You're a b[**]ch'" and "'I'm going to get you for this.'" Defendant made this threat several times while Alarcon and Edgar were talking near the patrol vehicle's partially lowered window. Defendant was not required to specifically threaten Edgar against making a report to the police. Defendant's promise to "get [Edgar] for this" as Edgar is discussing defendant's crimes with Alarcon is reasonably interpreted as intended to discourage Edgar from making a report of his attempted burglary and theft.

Defendant also argues that if he had intended to stop Edgar from making a report, he would have made a specific threat in Edgar's yard. This contention is meritless. That defendant did not make earlier threats before police involvement does not preclude a finding his threats while detained constituted dissuasion under section 136.1, subdivision (b)(1).

Defendant acknowledges this offense also does not require proof of a victim's subjective beliefs, but again emphasizes Edgar testified he did not think defendant was trying to prevent him from making a report. As defendant concedes, Edgar's subjective beliefs are irrelevant to whether defendant threatened him in violation of section 136.1, subdivision (b)(1). There is in any event conflicting testimony about whether Edgar believed defendant was threatening him for making a report. Edgar testified defendant threatened him "as [he] was making the report," but he "just took them as threats." This

_____

[2]The evidence permits an inference defendant's threats served dual objectives of dissuading Edgar from causing his arrest under section 136.1, subdivision (b)(3) and from making a report under subdivision (b)(1) as these objectives are not mutually exclusive. A report to the police does not necessarily occur after an arrest since a report may precipitate the arrest.

17.

suggests Edgar took these as general threats rather than specifically intended to discourage him from making a report. Alarcon testified Edgar said he believed defendant made the threats to dissuade him from making a report. "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.) Irrespective of the victim's interpretation, the jury may have found Alarcon's testimony about what Edgar said he believed was sufficient evidence defendant intended to discourage Edgar from making a report. "The final determination as to the weight of the evidence is for the jury to make. We do not reweigh it and substitute our view for theirs." (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

Lastly, defendant argues his threats were too late to prevent a report because Edgar had already called 911, pointed defendant out to Alarcon, and had begun making a report. "Proof of an attempt to prevent any future report to the police [is] sufficient to satisfy the statute." (*People v. Pettie* (2017) 16 Cal.App.5th 23, 54–55.) Defendant's threats were contemporaneous with Edgar's report to Alarcon. A juror could reasonably infer defendant's concurrent threats were intended to dissuade Edgar from providing further details of his crimes to Alarcon. There is sufficient evidence to support defendant's conviction for dissuasion under section 136.1, subdivision (b)(1) and we reject defendant's sufficiency of the evidence claim.

## II.    Instructional Error

Defendant contends the trial court incorrectly instructed the jury on the elements of knowledge and intent for dissuading a witness from causing or seeking an arrest on count 5. The People concede the jury was not properly instructed on the elements of this offense, but argue the error was harmless.

### A.    Jury Instructions, Deliberations and Verdict

The trial court instructed the jury on the elements of witness dissuasion in violation of section 136.1, subdivision (b)(3) on count 5 using a modified version of

CALCRIM No. 2622: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant tried to prevent or discourage [Edgar] from arresting, causing or seeking the arrest of someone in connection with a crime; [¶] 2. [Edgar] was a crime victim; [¶] AND [¶] 3. The defendant knew he was trying to prevent or discourage [Edgar] from *reporting a crime* and intended to do so." (Italics added.) The court orally instructed the jury on this count verbatim from the written instructions.

The jury was further instructed per CALCRIM No. 251 that the crimes "require proof of the union, or joint operation, of act and wrongful intent," and "to find a person guilty of the crimes in this case …[defendant] must not only intentionally commit the prohibited act but must do so with a specific intent and/or mental state. The act and the specific intent and/or mental state required are explained in the instruction for that crime or allegation."

During jury deliberations, the jury requested readback of "[Alarcon]'s testimony regarding the defendant admitting to breaking into the home and the duration of his shouting in the patrol car." The jury also requested Edgar's "testimony regarding [defendant's] comments towards him while in the cop car." The jury later sent a note stating it had reached a verdict on four out of five counts but "cannot reach a unanimous decision on one count." The jury was given instructions on further deliberations and subsequently reached a verdict on all five counts. The verdict form for count 5 read: "We, the Jury, empaneled to try the above entitled case, find the defendant … GUILTY of a felony, to wit: prevent or dissuade a witness or victim from seeking or causing an arrest, in violation of Section 136.1(b)(3) …, as charged in the Fifth count of the Information."

## B. Forfeiture

Although defendant did not object to the instruction at trial, we will consider the merits of his claim because he contends the trial court did not properly instruct the jury

19.

on the elements of the offense.  (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)  "Instructions regarding the elements of the crime affect the substantial rights of the defendant, thus requiring no objection for appellate review."  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503; see § 1259.)

### C. Applicable Law and Analysis

We review a claim of instructional error de novo.  (*People v. Mitchell*, *supra*, 7 Cal.5th at p. 579.)  "The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense."  (*People v. Merritt* (2017) 2 Cal.5th 819, 824.)  Misinstruction of the jury on one or more elements of the offense is subject to review under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).  (*People v. Hendrix* (2022) 13 Cal.5th 933, 942.)  Under this "'stricter' standard of review" the error requires reversal unless it is harmless beyond a reasonable doubt.  (*Ibid*.)  "This is because the federal Constitution requires 'criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'  [Citations.]  A jury misinstruction that relieves the prosecution of its burden to prove an element of the crime—by either misdescribing the element or omitting it entirely—violates this requirement."  (*Ibid*.)

It is undisputed the jury was misinstructed on the elements of the offense for witness dissuasion under section 136.1, subdivision (b)(3) on count 5.  Specifically, the instructions incorrectly stated the third element of the offense because the instruction repeated the knowledge and intent language related to the offense of preventing or dissuading a witness from *reporting a crime* for count 4 instead of from *arresting or causing or seeking the arrest of any person*.

The parties do not dispute this error is subject to review under *Chapman*.  They disagree on whether the error was prejudicial though, and defendant contends he is entitled to relief because the case was close and his specific intent was in dispute.

20.

While we have concluded there was substantial evidence to support defendant's conviction under section 136.1, subdivision (b)(3) with respect to defendant's sufficiency of the evidence claim, our inquiry here is different. (*In re Lopez* (2023) 14 Cal.5th 562, 590, fn. 8 [sufficiency of the evidence is not the appropriate standard to review instructional error].) We do not "view the evidence in the light most favorable to the prosecution [or] presume in support of the judgment the existence of any facts the jury might reasonably infer from the evidence [citation], [instead] our task in analyzing the prejudice from the instructional error is whether any rational fact finder could have come to the *opposite* conclusion." (*People v. Mil* (2012) 53 Cal.4th 400, 418.) "'[S]afeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless.' [Citation.] 'A reviewing court making this harmless-error inquiry does not, as Justice Traynor put it, "become in effect a second jury to determine whether the defendant is guilty." [Citation.] Rather a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.'" (*Lopez*, *supra*, at p. 581.)

Defendant was charged with three witness dissuasion offenses: dissuading a witness from giving testimony (§ 136.1, subd. (a)(1); count 2), dissuading a witness from making a report (§ 136.1, subd. (b)(1); count 4) and dissuading a witness from causing or seeking arrest (§ 136.1, subd. (b)(3); count 5). These offenses were all alleged to have arisen from defendant's threats against Edgar while defendant was in Alarcon's patrol vehicle.

The People argue that because counts 4 and 5 are supported by the same facts and circumstances and the jury found defendant guilty on count 4, a properly instructed jury

would have found defendant had the requisite mens rea to be guilty on count 5 as well. We disagree. The elements of these offenses are not identical, but rather, are directed at different unlawful goals. (See, e.g., *Hallock*, *supra*, 208 Cal.App.3d at p. 610 [reversal of conviction for reporting a crime under § 136.1, subd. (b)(1) required where the jury was improperly instructed on dissuading a witness from giving testimony under § 136.1, subd. (a)]; *People v. Fernandez* (2003) 106 Cal.App.4th 943, 949–950 [conviction under § 136.1, subd. (b)(1) reversed where defendant attempted to influence the witness's testimony, not prevent or discourage the witness from making a report].) Section 136.1, subdivision (b)(3) is a *specific* intent crime. (*People v. McDaniel* (1994) 22 Cal.App.4th 278, 284 [§ 136.1 requires showing the defendant had the specific intent to achieve some further or additional consequence]; *People v. Hood* (1969) 1 Cal.3d 444, 457 ["When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent"].) Defendant's threats alone are insufficient to prove defendant's guilt under section 136.1, subdivision (b)(3) on the facts of this case. The prosecution was required to show that defendant *knew* he was trying to prevent or discourage Edgar from *causing or seeking the arrest* of any person and *intended to do so*.

Defendant argues the case was close primarily based on the jury's questions and the length of their deliberations. "Every jury presented with instructions that omit or misdescribe the elements of an offense will have considered—and actually relied to some extent on—an invalid theory of liability. These 'indications' are no bar to a finding of harmlessness …." (*In re Lopez*, *supra*, 14 Cal.5th at p. 590.) To find error harmless, we "must be persuaded that, in light of the jury's findings and the evidence at trial, any rational juror who made those findings would have made the additional findings necessary for a valid theory of liability, beyond a reasonable doubt, if the jury had been properly instructed." (*Id.* at p. 589.)

An "instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.'" (*People v. Mil*, *supra*, 53 Cal.4th at p. 417.)  That is not the case here.  Whether defendant intended to discourage Edgar from causing or seeking his arrest was a contested issue at trial.  As previously discussed, there was conflicting evidence regarding whether defendant had already been arrested before his threats.  If defendant believed he was already under arrest, his threats could not have been intended to dissuade Edgar from causing his arrest.  If so, defendant would have believed the ship had already sailed because the event to be prevented—defendant's arrest—would have already occurred.  (See, e.g., *People v. Reynoza*, *supra*, 75 Cal.App.5th at pp. 183–184 [defendant could not be convicted for conduct to prevent a complaint from being filed under § 136.1, subd. (b)(2) where defendant knew the complaint had already been filed].)  As previously discussed, defense counsel's closing argument showed whether defendant was already arrested was contested:  "[Edgar] obviously called the police and that's where [*sic*] they are there.  He has already done that part of it.  And [defendant] once again is handcuffed, locked in the back of a patrol car.  I think a reasonable person in [defendant's] position would think they are under arrest at that point."[3]  The prosecutor also referred to defendant as arrested at one point during his closing argument:  "The threats are heard by both Deputy Alarcon and [Edgar] including again the infamous you're a b[**]ch and I'm going to get you for this.  [¶] I encourage you again to use your common sense as to [*sic*] and look at the totality of the circumstances.· Look at all the context in which the statement is being made.…  [¶] *He just got arrested.*"  (Italics added.)

---

[3]The People argue defense counsel's questioning of whether defendant believed he was arrested was only in relation to count 4, not count 5.  While defense counsel only specifically referenced count 4 before this statement, the argument reflects defense counsel's questioning of defendant's specific intent in making threats against Edgar, which is relevant to both witness dissuasion counts.

23.

There was limited evidence to show defendant specifically intended to discourage Edgar from causing an arrest by his threats. Edgar's testimony on how he interpreted defendant's threats was equivocal on this issue:

> "[PROSECUTOR:] Q. … And did you believe [defendant] was making these threats to prevent you from making a report with Deputy Alarcon?
>
> "[EDGAR M.:] A. Well, not—not necessarily to prevent. I took it more as a threat that, you know, since he got – since he was getting, you know, arrested, he was threatening me for that reason.
>
> "Q. Okay. He was threatening you because you were—you were getting him arrested. Is that what you—
>
> "A. Possibly, yes."

Later, on cross-examination, Edgar testified in pertinent part:

> "[DEFENSE COUNSEL:] Q. You said you took those statement[s] as a threat not to testify or just scare you?
>
> "[EDGAR M.:] A. I took them as a threat period. I took them as a threat. I don't know what his intentions were threatening me but I take them as a valid threat towards me or my family. [¶] … [¶]
>
> "Q. Okay. So you thought the statements were a threat to you but not to not make you testify or file a report to police? I don't want to put words in your mouth. [¶] Is that what you are saying?
>
> "A. Well, I mean, he—he threatened as I was making the report so, I mean, it could have been for me not to be here right now but I just took them as threats."

Alarcon testified Edgar believed defendant intended to discourage Edgar from making a report and testifying:

> "[PROSECUTOR:] Did you ask [Edgar M.] why he believed [defendant] was making those comments towards him?
>
> "[DEPUTY ALARCON:] A. I did.

24.

"Q. And what, if anything, did [Edgar M.] say was the reason he believed [defendant] was making those statements towards him?

"A. To dissuade him from making a report—

"Q. Okay.

"A. —to me.

"Q. Any other reasons that you can recall?

"A. Not that I can recall. I just remember that he told me that he did—he was—to make the report itself."

After reviewing his report, Alarcon testified Edgar told Alarcon he believed defendant's statements were made "[t]o prevent him from making a report and to possibly later testifying in court." This testimony provides evidentiary support for the other witness dissuasion offenses, but not for discouraging defendant's arrest under section 136.1, subdivision (b)(3).

The jury acquitted defendant on count 2 of witness dissuasion from giving testimony under section 136.1, subdivision (a)(1) but convicted him on count 4 of witness dissuasion from making a report under section 136.1, subdivision (b)(1). The jury necessarily found defendant knew he was discouraging Edgar *from making a report* and intended to do so by that verdict. This same finding is reflected in the misdescribed element on count 5 for witness dissuasion under section 136.1, subdivision (b)(3). That defendant was convicted for dissuading Edgar from making a report does not compel a conclusion that a jury would also have found defendant knew he was discouraging Edgar from causing or seeking his arrest and intended to do so. The jury's verdict on count 5, as reflected in the verdict form, is a general finding of guilt for violating the statute. We cannot from the verdict form deduce that the jury necessarily found defendant had the requisite intent to commit this offense. Since defendant was acquitted on count 2, the jury presumably had reasonable doubt as to whether the intents behind defendant's threats were as wide-ranging as the prosecution alleged. Although defendant may have

pursued more than one objective by his threats, the evidence regarding his knowledge and intent is not so overwhelming that any instructional error must be deemed harmless. Based on the evidence at trial, a properly instructed jury could have had a reasonable doubt about whether defendant had the requisite knowledge and intent to discourage Edgar from causing or seeking his arrest.

Since we cannot conclude the instructional error was harmless beyond a reasonable doubt, the conviction under section 136.1, subdivision (b)(3) on count 5 must be reversed. Because sufficient evidence supported the conviction, however, "double jeopardy principles do not come into play" and the People may retry defendant for this offense. (*Hallock*, *supra*, 208 Cal.App.3d at p. 607; *People v. Wetle* (2019) 43 Cal.App.5th 375, 388.)

## III. Motion for Mistrial

Defendant contends the trial court should have granted his request for a mistrial after three jurors learned about defendant's prior conviction.

### A. Additional Background

On June 9, 2022, before jury deliberations, the jury reentered the courtroom and a verdict form for defendant's prior conviction was visible on a big television screen in the courtroom. The court staff cut the screen immediately when alerted by the prosecutor. Three jurors reported they saw the document on the screen, and the prosecutor noted to the court that he observed a fourth juror reading the screen. The court questioned the four jurors separately and provided the parties with an opportunity to question the jurors.

On questioning, Juror No. 2 said: "I believe it said his name and something about a previous conviction." The juror confirmed he could put this aside and progress only with the evidence presented.

26.

When questioned by the court, Juror No. 5 said: "I read that the defendant was found guilty of a charge but I didn't get to read the whole thing." The juror agreed she could deliberate based on the evidence and not discuss what she read with other jurors.

Juror No. 12 reported she saw "[s]omething about a prior conviction for a name. I didn't get the whole name but it was M-u-r something." The juror confirmed what she saw on the screen would not impact how she processed the case.

The juror identified by the prosecutor, Juror No. 6, said she did not see anything on the screen.

After the jury was sent to deliberate, defense counsel moved for a mistrial based on the three jurors learning about defendant's prior conviction. The prosecutor argued the jurors all said they could serve without considering what they had seen and would not share it with other jurors. The court was satisfied the jurors were "unequivocal" that they would not consider it in their deliberations and denied defendant's motion for a mistrial.

## B.     Applicable Law and Analysis

We review a trial court's denial of a motion for mistrial for abuse of discretion. (*People v. Avila* (2006) 38 Cal.4th 491, 573.) A trial court should grant a motion for mistrial only when a defendant's chances of receiving a fair trial have been irreparably damaged. (*Ibid.*) "'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.'" (*Ibid.*) This "requires a nuanced, fact-based analysis." (*People v. Chatman* (2006) 38 Cal.4th 344, 370.)

"There is little doubt exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580 (*Harris*).) The jury's awareness of a defendant's prior conviction creates a "danger that the jury will conclude

that defendant has a criminal disposition and thus probably committed the presently charged offense." (*People v. Thompson* (1988) 45 Cal.3d 86, 109.)

Defendant argues the error here was incurably prejudicial because it "was more concrete than the example in *Franklin*." In *People v. Franklin* (2016) 248 Cal.App.4th 938 (*Franklin*), there were three fleeting references to the defendant's past criminality, two during a detective's testimony and one shown in a text message to a witness. (*Id.* at p. 954.) The court of appeal acknowledged the "California Supreme Court has consistently found vague and fleeting references to a defendant's past criminality to be curable by appropriate admonition to the jury." (*Id.* at p. 955.) The court cited examples where the trial court properly denied a motion for mistrial following fleeting references to a defendant's criminality, including: *People v. Collins* (2010) 49 Cal.4th 175, 197 (trial court denied mistrial motion following defendant's girlfriend's remark that defendant called her from "'Susanville before he got out'"); *People v. Valdez* (2004) 32 Cal.4th 73, 123 (detective's fleeting reference to getting the defendant's mug shot from jail was not so outrageous that an admonition could not have cured it); and *People v. Bolden* (2002) 29 Cal.4th 515, 554 (detective's identification of the defendant's address as a parole office during questioning was insignificant in context of the entire trial). The court concluded the fleeting references to the defendant's past criminality did not result in incurable prejudice in part because "[n]one of the statements clearly referred to [the defendant], and none unambiguously pointed to arrests, convictions, or any other actual criminal history." (*Franklin*, *supra*, at p. 956.)

Defendant argues there was no similar ambiguity here because at least three jurors believed defendant had suffered a prior conviction. While admittedly there was less ambiguity here than the brief references in *Franklin*, the three jurors only learned defendant had a prior conviction but remained unaware what prior offense defendant committed. The facts here are dissimilar from *People v. Young* (1991) 234 Cal.App.3d 111, also cited by defendant, wherein the court of appeal concluded it was prejudicial

error to disclose to the jury the defendant's prior conviction for the same offense of car theft. The court held that informing the jury of the prior offense was prejudicial "on the facts of this case" because it could lead the jury to view the defendant "as a professional car thief rather than a mischievous joyrider." (*Id.* at p. 115.) This case does not pose a similar risk the prior conviction would lead jurors to believe defendant was a career thief because his prior crime remained undisclosed. (Defendant's prior conviction in 2018 was for first degree burglary in violation of § 459.)

Furthermore, awareness of defendant's prior criminality was limited to only three jurors, not the entire jury as in *Franklin* and *Young*. The trial court questioned these three jurors and was satisfied that each was "unequivocal" they could disregard defendant's prior conviction in their deliberations. This determination was within the court's sound discretion. (*People v. Avila*, *supra*, 38 Cal.4th at p. 573.)

Defendant argues that, unlike in *Harris*, there were "significant proof problems for counts 4 and 5," and the jury deliberations indicate the case was close. In *Harris*, the defendant requested a mistrial after a witness referred to the defendant's parole officers during her testimony. (*Harris*, *supra*, 22 Cal.App.4th at p. 1580.) The court of appeal found the error was harmless because the evidence of the defendant's guilt was substantial. (*Id*. at p. 1581.) Although the evidence against defendant may not have been overwhelming on all the charged offenses, it was sufficiently strong that any error in denying defendant's motion for a mistrial was harmless. Moreover, the jury acquitted defendant on one count of witness dissuasion, indicating the jurors assessed defendant's guilt based on an impartial evaluation of the evidence presented at trial, not on improper consideration of defendant's prior criminality. Defendant's contention that awareness of defendant's prior conviction would have influenced those jurors' views of his threats is belied by the jury's verdict and is speculative.

The length of the jury's deliberations does not necessarily indicate the case was close. Part of the jury's time was spent on readback of testimony and "the length of the

29.

deliberations could as easily be reconciled with the jury's conscientious performance of its civic duty, rather than its difficulty in reaching a decision." (*People v. Walker* (1995) 31 Cal.App.4th 432, 439.) The trial court instructed the three jurors to disregard the prior conviction in their deliberations and not share this information with the other jurors. While defendant argues the court's admonition "emphasized the dynamite nature of the prior conviction," we must presume the jurors followed the court's instructions and admonition in the absence of evidence to the contrary. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 292.)

There is not a reasonable probability defendant would have received a better result if the three jurors were unaware of his prior conviction and thus, the trial court did not abuse its discretion in denying defendant's motion for a mistrial. (*Harris*, *supra*, 22 Cal.App.4th at p. 1581; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## IV.    Challenge to Sentence

Defendant challenges his sentence as unlawfully constructed. Defendant makes two contentions regarding his sentence on count 4: (1) the court improperly imposed a four-year sentence per section 136.1, subdivision (b)(1) instead of imposing sentence under section 136.1, subdivision (c)(1); and (2) the "subordinate" term of four years on count 4 was unlawful because it was not greater than the "principal" term of four years on count 1. The People argue defendant forfeited a challenge to his sentence by failing to object, and defendant's claims are without merit since the sentence was lawfully constructed.

### A.    Sentencing

On July 12, 2022, the trial court held a sentencing hearing. Defense counsel made an oral *Romero* motion to strike defendant's prior conviction allegation and to strike the five-year enhancement allegation. The prosecutor opposed the motion, arguing defendant's prior strike had similar facts and was recent since it was from 2018.

The trial court denied defendant's motion to dismiss the prior strike or the five-year enhancement. The court detailed defendant's sentence on counts 1 and 4 as relevant herein: "Given that, as to Count 1, a violation of [sections] 664/460[, subdivision] (a) with [section] 667[, subdivision] (e), Probation is denied. The defendant is sentenced to the Department of Corrections for the middle term of four years; said sentence to be enhanced by five years, pursuant to Section 667[, subdivision] (a) …. [¶] … [¶] With that, as to Count 4, a violation of [section] 136.1[, subdivision] (b)(1) with [section] 667[, subdivision] (e), probation is denied. The defendant is sentenced to the Department of Corrections for the midterm of four years; said sentence to be served fully consecutive to the sentence imposed in Count 1 for a total fixed term of 13 years."

After imposition of sentence, the trial court asked defense counsel if there was "anything more." Defense counsel confirmed there was nothing more and made no objection to defendant's sentence.

## B. Applicable Law and Analysis

A defendant's failure to object to the sentence imposed at sentencing generally forfeits a challenge to the sentence on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351.) Forfeiture does not apply to an "unauthorized" sentence that "could not lawfully be imposed under any circumstance in the particular case." (*Id.* at p. 354.) If the sentence is unauthorized, "[a]ppellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*Ibid.*)

Defendant was given a meaningful opportunity to object to his sentence and did not do so. His failure to object forfeited his challenge to the sentence unless it could not lawfully be imposed. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 752 ["It is only if the trial court fails to give the parties any meaningful opportunity to object that the *Scott* rule becomes inapplicable"].)

31.

Defendant argues the trial court "had discretion to impose a concurrent or consecutive sentence on count 4, but once the decision was made to impose a consecutive term, the court had to impose a full midterm sentence because the underlying conviction was for dissuading a witness." Defendant correctly notes a felony violation of section 136.1, subdivision (b) carries a triad sentence of 16 months, two years and three years. (§§ 136.1, subd. (b), 18, subd. (a).) The court sentenced defendant to the middle term of four years (two years doubled for the prior strike) on count 4 pursuant to section 136.1, subdivision (b). Strangely, defendant argues the court should have imposed a middle term sentence pursuant to section 136.1, subdivision (c), which provides for an *elevated* triad sentence of two years, three years, and four years, because the jury found defendant acted maliciously and used or threatened force on this count.

Defendant was charged per subdivision (b)(1) of section 136.1 on count 4. Section 136.1, subdivision (c) makes a violation of subdivision (b) of the statute a "felony punishable by imprisonment in the state prison for two, three, or four years" if the act is committed "knowingly and maliciously" and under certain circumstances, including "by an express or implied threat of force or violence." (See *People v. Torres* (2011) 198 Cal.App.4th 1131, 1138 [§ 136.1, subd. (c) makes the offenses in § 136.1, subd. (b) a felony "subject to a higher range of punishment"].) The amended information did not include allegations under section 136.1, subdivision (c) on any of the witness dissuasion counts. Yet the jury was instructed that if it found defendant guilty on counts 4 and 5, it must determine if defendant "acted maliciously" and "used force or threatened, either directly or indirectly, to use force or violence on the person or property of a victim." The jury made a true finding on count 4 on a separate verdict form that defendant "acted maliciously and used or threatened to use force when intimidating a victim or witness … in violation of Section 136.1[, subdivision] (c)." Section 136.1, subdivision (b), however, does not require a showing of malice to violate the statute. (*People v. Brackins*, *supra*, 37 Cal.App.5th at pp. 66–67.)

Section 136.1, "[s]ubdivision (c)(1) must be recognized as describing a greater offense with its own alternative and separate sentencing scheme" from subdivision (b)(1) of the statute. (*People v. Torres*, *supra*, 198 Cal.App.4th at p. 1147.) The People candidly acknowledge no violation of section 136.1, subdivision (c) was ever alleged against defendant in the amended information and thus, he could not have been convicted or sentenced under subdivision (c). We agree defendant may not be sentenced for an offense with a greater punishment for which he was never charged notwithstanding defendant's lack of objection to the jury instructions or verdict forms. (See *People v. Toro* (1989) 47 Cal.3d 966, 976–977 [failure to object is deemed implied consent to the jury verdict forms], disapproved on other grounds by *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3; *People v. Arias* (2010) 182 Cal.App.4th 1009, 1021 [*Toro* did not apply where the verdict form included an enhancement that was never pled in the information or any pleading]; *People v. Anderson* (2020) 9 Cal.5th 946, 958–960 [following *Arias* where firearm enhancements were submitted to the jury without being pled in the information and the defendant did not object to the verdict forms].) That is not what occurred here. While the jury made a true finding on the uncharged section 136.1, subdivision (c) allegation, the abstract of judgment and the trial court's imposition of sentence solely reflect defendant's conviction under section 136.1, subdivision (b)(1), the statutory subdivision under which defendant was charged on count 4. The probation officer's report also cites section 136.1, subdivision (b)(1), not subdivision (c), on count 4. Defendant was not sentenced pursuant to section 136.1, subdivision (c) and thus, the improper submission of those allegations to the jury is not reflected in his sentence. Defendant was found guilty on the charged offense for count 4 on a separate verdict form for violating section 136.1, subdivision (b)(1) and was properly sentenced pursuant to that statutory subdivision.[4]

---

[4]We decline defendant's implicit invitation in his reply brief to dismiss the witness dissuasion convictions in response to the People's concession defendant was never charged with

Defendant acknowledges the court was authorized to impose the full midterm sentence on count 4 once the term on that count was imposed consecutive to count 1. (§ 1170.15 [notwithstanding § 1170.1, subd. (a), the subordinate term for a consecutive felony violation of § 136.1 "shall" be imposed at the middle term].)  The court thus lawfully imposed the middle term on count 4.  However, defendant also argues the sentence was unlawful because the "principal" term on count 1 of four years was not greater than the "subordinate" term on count 4 for the same number of years.

The People counter "the principal term need not be 'greater' than the subordinate term, it need only be 'the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements'" per section 1170.1, subdivision (a).  The People note there is no requirement the principal term be for a greater number of years than the subordinate term per California Rules of Court, rule 4.452.  This rule states in pertinent part:  "The principal term is the term with the greatest punishment imposed including conduct enhancements.  If two terms of imprisonment have the same punishment, either term may be selected as the principal term."  (Cal. Rules of Court, rule 4.452(a)(2).)  Defendant in his reply brief acknowledges this rule "fixes the ambiguity" in section 1170.1, subdivision (a) and withdraws his claim under that statutory subdivision.  We agree the principal term need not be for more years than the subordinate term, and the court was permitted to impose sentence on count 1 as the principal term and count 4 as the subordinate term.

We conclude defendant forfeited the issue by failing to object below, and the unauthorized sentence exception does not apply because the sentence was lawfully constructed.

---

violating section 136.1, subdivision (c).  Defendant was separately found guilty by the jury of the charged offense on count 4 and the jury's additional findings on the uncharged allegations do not vitiate the jury's finding of guilt on the lesser offense.  (See *People v. Merritt*, *supra*, 2 Cal.5th at p. 822 [error must not vitiate all the jury's findings].)

34.

## DISPOSITION

The conviction for violating section 136.1, subdivision (b)(3) on count 5 is reversed for instructional error.  The matter is remanded for further proceedings.  In all other respects, the judgment is affirmed.

PEÑA, Acting P. J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

35.